Jeffrey MAY, individually, Jean Ross, as natural parent of Damon Ross, an infant, and Jean Ross, individually, Bonnie Schorske, as natural parent of Mark Tulloss, an infant, and Bonnie Schorske, individually, Brenda Butler, as natural parent of Cary Butler, an infant, and Brenda Butler, individually, Gary Drew, individually, Plaintiffs,

v.

Dr. Saul COOPERMAN, Commissioner of the Department of Education, New Jersey Department of Education, Edison Township Board of Education, Old Bridge Township Board of Education, Defendants,

and

Alan J. Karcher as Speaker of the New Jersey General Assembly, the New Jersey General Assembly, Carmen A. Orechio as President of the New Jersey Senate and the New Jersey Senate, Defendants-Intervenors.

Civ. A. No. 83–89.

United States District Court, D. New Jersey.

March 28, 1984.

Pellettieri, Rabstein & Altman, Trenton, N.J., for plaintiffs.

Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, Newark, N.J., for Alan J. Karcher and Carmen A. Orechio.

Marinari & Farkas, Trenton, N.J., for New Jersey General Assembly and New Jersey Senate.

Irwin I. Kimmelman, Atty. Gen. of New Jersey, Trenton, N.J., Attorney for Dr. Saul Cooperman, Com'r of Educ. and Dept. of Educ.

R. Joseph Ferenczi, Edison, N.J., for Edison Tp. Bd. of Educ.

## OPINION

DEBEVOISE, District Judge.

Plaintiffs sued for declaratory and injunctive relief contesting the constitutionality of New Jersey's "moment of silence"

law. New Jersey P.L.1982, Ch. 205. After a trial they prevailed on the merits. *May v. Cooperman*, 572 F.Supp. 1561 (D.N.J. 1983). In my original opinion I held that under the circumstances of the case attorneys fees should not be awarded. After plaintiffs moved for reconsideration of that ruling, I was persuaded that plaintiffs are entitled to an award of attorneys fees against the intervening legislators but not against the original defendants. 578 F.Supp. 1308 (D.N.J.1984). Plaintiffs' attorneys have filed affidavits in support of a request for such fees in the aggregate amount of $146,396.25 and for disbursements.

This total sum was arrived at as follows:

Pellettieri, Rabstein and Altman
| | | |
|---|---|---|
| Anne P. McHugh | | |
| 336.30 hours at $85 | $28,585.50 |
| Richard M. Altman | | |
| 93.60 hours at $125 | 11,700.00 |
| Marilyn L. Kline | | |
| 57.25 hours at $85 | 4,866.25 |
| Bruce H. Stern | | |
| .25 hours at $85 | 21.25 |
| Kyle T. Birch (Paralegal) | | |
| 15.70 hours at $10 | 157.00 |
| | | |
| Norman L. Cantor | | |
| 197.75 hours at $150 | 29,662.50 |
| | | |
| Jack D. Novik | | |
| 114.5 hours at $125 | 14,312.50 |
| | | |
| Deborah H. Karpatkin | | |
| 75.5 hours at $85 | 6,417.50 |
| | | |
| Jeffrey E. Fogel | | |
| 15 hours at $125 | 1,875.00 |
| | | |
| Total | $ 97,597.50 |
| Applying multiplier | 1.50 |
| | | |
| | $146,396.00 |
| (Actually $146,396.25) | |

The law firm of Pellettieri, Rabstein and Altman was invited by the American Civil Liberties Union of New Jersey to handle this case for plaintiffs who had been in communication with the ACLU. Anne P. McHugh, a senior associate with the firm, has been a member of the bar since 1975 and has had extensive experience in civil rights and civil liberties litigation. Richard M. Altman is a partner of the firm, has been a member of the bar since 1967 and has had extensive experience as a trial attorney in criminal and civil litigation. Marilyn L. Kline and Bruce H. Stern are associates of the firm and each was admitted to the bar in 1981. Kyle T. Birch is a paralegal employed by the firm. In this case the firm performed the services expected of trial counsel, supported by assistance provided by other lawyers mentioned below.

Norman L. Cantor, a 1967 graduate of Columbia University School of Law, is a professor at Rutgers Law School where he has taught constitutional law for the last 13 years. He served as a consultant to Pellettieri, Rabstein and Altman. He attended strategy meetings, prepared expert witnesses for trial, sat at counsel table during trial, revised the brief concerning legislative privilege, reviewed newspaper clippings, conducted legal research on the establishment clause and the role of legislative purpose, conducted additional research, wrote trial brief and reviewed the defendants' trial brief.

Jack D. Novik is Assistant Director for Affiliate Program of the American Civil Liberties Union. He is a 1972 graduate of New York University School of Law and before commencing work with the national ACLU staff he clerked for a federal judge and worked in the litigation department of a major New York City law firm. He has acquired extensive experience in various civil rights areas, including questions of church and state. In this case he consulted with the lawyers at Pellettieri, Rabstein and Altman during the entire course of the case; he had principal responsibility for researching and preparing plaintiffs' opposition to the legislators' motion to suppress discovery on the grounds of legislative privilege. He argued this motion in court.

Deborah H. Karpatkin, a 1980 graduate of Columbia University School of Law, is staff counsel for the American Civil Liberties Union of New Jersey. She has clerked for a United States District Court judge and until 1983 was associated with a New York City law firm specializing in labor and

civil rights litigation. She researched and drafted the memorandum supporting plaintiffs' motion to reconsider my original denial of attorneys fees. She then assumed principal responsibility for preparing plaintiffs' affidavit of services.

Jeffrey E. Fogel, a 1969 graduate of Rutgers Law School, is an attorney and Executive Director of the American Civil Liberties Union of New Jersey. He has had extensive experience in civil rights litigation. His principal work in the case was "selection of plaintiffs", review and preparation of legislative history, "selection of counsel" and review of legislative history and theory of case with them, participation in and review of original pleadings, communications concerning enforcement of the temporary restraining order and preparing an affidavit of services.

■ In setting attorneys fees, it is necessary first to arrive at a lodestar figure, which is the number of hours reasonably spent in connection with the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Hughes v. Repko,* 578 F.2d 487 (3d Cir.1978). In this case plaintiffs unambiguously prevailed in the entire litigation, and therefore there is no necessity to apportion work between different phases of the litigation.

■ Resonable rates of compensation can readily be established. The suggested rates for McHugh and Altman of $85 per hour and $125 per hour are clearly reasonable for persons of their experience in this kind of litigation in New Jersey. Kline and Stern have considerably more limited experience, having been admitted to the bar as recently as 1981. A reasonable rate for them is $75 per hour. The proposed rate of $10 per hour is reasonable for Birch, the paralegal.

I find a rate of $150 per hour for Cantor to be excessive when compared with that of senior trial counsel and will reduce it to $125. Novik's work was primarily research and drafting memoranda. A reasonable hourly rate for those services in light of his extensive experience in the field of civil rights is $100. A reasonable hourly

rate for his March 14, 1983 court appearance (2 hours) is $125. The hourly rate of $85 sought for Karpatkin's services is reasonable. For reasons set forth below I am not going to award attorneys fees for Fogel's work in this case and therefore a reasonable rate for said services need not be established.

The fact that a host of attorneys worked on plaintiffs' behalf in this case makes it difficult to ascertain with precision the number of hours reasonably expended by those attorneys. There is certainly no reason why a large number of attorneys should not participate in the litigation, each contributing his particular experience and expertise. However, when this is done there is inevitable duplication of effort, and defendants should not be required to pay two or more attorneys for doing what one attorney might reasonably be expected to do. When analyzing the services for which compensation is sought in this case, I have tried to determine what work would have to be done by a major law firm trying a difficult case with tight time constraints. I have tried to eliminate what appears to be duplicative or unnecessary work and work which appears to be more a function of ACLU's organizational activities than a part of the trial of this case.

Applying these guidelines I conclude that most of the work of Pellettieri, Rabstein and Altman was reasonably necessary. I have, however, excluded the following:

Two hours each for McHugh and Kline devoted to the court appearance on January 10, 1983 were unnecessary, since Altman's presence alone was sufficient.

In view of the fact that Novik prepared and argued the legislators' discovery motion, McHugh's travel and appearance in court (4 hours) on March 14, 1983 was not reasonably necessary.

I think in a case of this nature it was reasonable to have two attorneys present and active at the trial. Therefore, McHugh's and Altman's trial time will be allowed. However, as noted below, the trial time of any other attorneys present at

the trial on behalf of plaintiffs will not be allowed.

I shall exclude from Cantor's compensable time the following:

There is a limit to how many attorneys should be paid to discuss strategy and plan the lawsuit. Local and national ACLU attorneys, trial counsel and Cantor participated in this process. While there is no reason why all of them should not so engage themselves, for the purposes of computing attorneys fee not all that time can be considered reasonably spent in prosecuting the litigation. I shall exclude the 13 hours Cantor spent for that purpose.

There was no reason why Cantor had to provide "services at counsel table" during the trial. His expertise was reasonably expended preparing expert witnesses, conducting legal research and reviewing and writing briefs. The 14 hours he spent at the trial will be excluded.

Much time seems to have been spent by many attorneys reviewing the newspaper clippings. The 8 hours Cantor spent for that purpose was not reasonably necessary.

While perhaps useful, I am not prepared to conclude that Cantor's review of amicus curiae briefs (6 hours) and memoranda concerning *Mueller v. Allen* (3 hours) and *Larkin v. Grendel's Den* (3 hours) were reasonably necessary.

Cantor's contribution to the case was his knowledge of and research concerning the establishment clause and his brief writing and revisions. This expertise enabled him to prepare certain expert witnesses to testify. Although somewhat duplicative of the work of the trial attorneys who had to prepare to interrogate the witnesses on the witness stand, I conclude that Cantor's work with expert witnesses was reasonably necessary.

Novik's principal contribution to the case was research, brief writing and arguing the legislators' February 22, 1983 motion for an order suppressing discovery on the grounds of legislative privilege. He had the assistance of two law students, for whose services no fees are requested. Allocating two hours for the court appearance, this leaves 112.5 hours devoted to research, writing, conferring and preparing for the argument. In his affidavit Novik seeks $14,312.50 (before application of the multiplier) for services rendered in connection with the legislators' motion. Reducing his hourly rate to $100 for out-of-court time results in a fee of $11,250 plus $250 for the court appearance, or a total of $11,500. Considering the fact that other attorneys for the plaintiffs also involved themselves with that motion, the aggregate request for compensation with respect to this single motion is unreasonable. I conclude that Novik spent more time than was reasonably necessary on this phase of the case and will reduce the number of out-of-court hours for which he may be compensated by one-quarter, namely to 84.50 hours.

Karpatkin's role in the case was to conduct legal research and prepare the memorandum of law in support of plaintiffs' motion for reconsideration of my original denial of attorneys' fees. This time (42.5 hours) was reasonably necessary. After the motion was argued, Karpatkin spent three days "at the Pellettieri firm's offices in Trenton, putting together their time and cost records, and drafting the Pellettieri firm's affidavit of services submitted herewith." To the extent that this time was devoted to preparing the affidavit of services, a task that the Pellettieri firm would have had to have performed if Karpatkin had not done it, the time was reasonably spent. This should have required no more than 12 hours. To the extent that time was devoted to "putting together [the Pellettieri firm's] time and cost records" it was not reasonably necessary. I shall, therefore, allow 12 of the 33 hours spent after January 10, 1984.

It appears to me that much of the 15 hours expended by Fogel were more in the nature of organizational activities of New Jersey ACLU than prosecution of this particular lawsuit, e.g., "selection" of plaintiffs, "selection" of counsel, etc. Other matters are clearly duplicative of the work of other attorneys, e.g., review of legislative history, review of pleadings, etc. I do

not consider this time to be reasonably necessary for fee award purposes.

Summarizing the foregoing, the lodestar figure is computed as follows:

Pellettieri, Rabstein and Altman

| | | | |
|---|---|---|---|
| McHugh | – | 330.30 hours at $85 | $28,075.50 |
| Altman | – | 93.60 hours at $125 | 11,700.00 |
| Kline | – | 57.25 hours at $75 | 4,293.75 |
| Stern | – | .25 hours at $75 | 18.75 |
| Birch | – | 15.70 hours at $10 | 157.00 |
| Cantor | – | 150 hours at $125 | 18,750.00 |
| Novik | – | 2 hours at $125 | 250.00 |
| | | 84.5 hours at $100 | 8,450.00 |
| Karpatkin | – | 54.5 hours at $85 | 4,632.50 |
| | | Total | $76,327.50 |

Having computed the lodestar figure of $76,327.50 it is necessary to determine whether a multiplier should be applied to it to determine the final fee.

■ I had originally decided to apply a multiplier in this case of 1.25. Drawing on the law as I understood it, I concluded that certain factors pointed towards allowing a multiplier and that certain factors pointed towards reduction of a multiplier. On the plus side there was, and still is, some risk that the plaintiffs will not prevail. The risk was not great, since prior to suit the New Jersey Attorney General had concluded that the statute was unconstitutional and that he would not defend it. Given the facts in the case which so clearly demonstrate that the purpose and effect of the legislation was religious in nature, the outcome seems clear. However, one cannot discount the possibility that the United States Supreme Court may shift course and pursue a "less than vigorous application of the *Lemmon* test" in the context of religious practices in public schools, *cf.*, *Lynch v. Donnelly*, —— U.S. ——, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), particularly Justice Brennan's dissent. Thus I believed that there was a contingency factor which weighted the scales in favor of a multiplier. The discovery issues raising questions of state legislators' immunity and the application of the free exercise and establishment clause to enforced moments of silence as distinguished from verbal prayer were novel. Very competent counsel, faced with aggressive and skilled opposition, handled both the written presentations and the trial and other court appearances skillfully and effectively. The results obtained were exactly the results sought. All that suggested the appropriateness of a multiplier under the prevailing law.

A countervailing consideration was the fact that this was a lawsuit by committee. Four attorneys and a paralegal worked on the case at the Pellettieri firm. In addition there was participation for which compensation is sought by a Rutgers Law School professor of constitutional law, an employee of the national American Civil Liberties Union, and by two employees of the New Jersey American Civil Liberties Union. Although I have attempted to eliminate obvious duplication of efforts, inevitably litigating a case in this manner carries a significant increase in the total hours expended resulting from the necessity for all the attorneys to confer, coordinate and communicate with each other. Even though there is a division of labor, some tasks must be performed twice when split among different attorneys. For example, when the professor of constitutional law prepared the expert witnesses to testify, his work had to be repeated to a significant extent by the trial attorneys so that they could properly conduct direct examination at trial.

Applying all of those considerations I would have added to the lodestar a multiplier of 1.5 to account for the plus factors, and I would have reduced the multiplier to 1.25 in order to reflect the inefficiencies resulting from litigation by a committee of lawyers. Multiplying the lodestar figure of $76,327.50 by the multiplier of 1.25 yielded a total fee of $95,409.38.

After I made that evaluation, the United States Supreme Court issued its opinion in *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). I read that opinion as circumscribing very

severely upward adjustment of the lodestar figure. There plaintiffs had established that hourly rates (in New York City) ranging from $95 per hour to $105 per hour for 809.75 hours billed were reasonable. This produced a fee (or lodestar figure) of $79,312. The District Court awarded an additional 50% of that figure amounting to $39,656.

The Supreme Court held that the lodestar figure "is presumed to be reasonable." It did not hold that an upward adjustment is never appropriate under 42 U.S.C. § 1988, but concluded that such an adjustment was not warranted in that case. However, the reasons which plaintiffs advanced in *Blum* to support their application for an upward adjustment are the same reasons advanced by plaintiffs in the present case, and the Supreme Court rejected them all.

The Court concluded that the novelty and complexity of the issues were reflected in the number of billable hours recorded by counsel. The special skill and experience of counsel were found to be reflected in the reasonable hourly rates. The Court stated, "[n]either complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award." Similarly the Court concluded that the quality of representation is generally reflected in the reasonable hourly rate. The present case, like *Blum*, is not "the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' See *Hensley* [*v. Eckerhart*]."

Further, the Court held that "[b]ecause acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award." In footnote 16 the Court stated, "Nor do we believe that the *number* of persons benefited is a consideration of significance in calculating fees under § 1988. Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasona-ble fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation."

Finally, the Court ruled that "[o]n this record, therefore, any upward adjustment for the contingent nature of the litigation was unjustified," adding in footnote 17, "We have no occasion in this case to consider whether the risk of not being the prevailing party in a § 1983 case, and therefore not being entitled to an award of attorney's fees from one's adversary, may ever justify an upward fee adjustment."

In my view the *Blum* case effects a fundamental change in the law governing the award of attorneys' fees in § 1983 cases. No longer are the fee award principles which evolved in securities and antitrust class actions to be applied unmodified in § 1983 cases. Insofar as application of a multiplier is concerned, *Hughes v. Repko* no longer states the law. *Blum* sets forth new standards and appears to be a response to severe criticism of seemingly exhorbitant fee awards in § 1983 cases. Plaintiffs in the present case have less reason for the application of a multiplier than the plaintiffs in *Blum*. I conclude that *Blum* precludes me from enlarging the lodestar fee of $76,327.50.

Plaintiffs seek reimbursement of their attorneys' disbursements. I have examined the items expended by the Pellettieri firm in the total amount of $5,069.95. There appears to be one duplication in that payment is sought for $280.94 spent to reimburse Dr. Langdon Gilkey. New Jersey ACLU seeks the same sum which, according to Karpatkin's affidavit, was paid to the Pellettieri firm. The Pellettieri firm will be allowed their requested disbursements less $280.94, *i.e.*, $4,789.01.

I have examined New Jersey ACLU's disbursements totaling $906.71 and conclude that all should be allowed except the January 1984 expenses of $76.05 for traveling to Trenton, presumably to prepare the Pellettieri firm's fee application and to put

**1464**

together their time and cost records. The amount allowed, therefore, will be $830.66.

Plaintiffs' attorneys are requested to submit an order implementing this opinion.