674 F.2d 1195
 28 Fair Empl.Prac.Cas. 944,
29 Empl. Prac. Dec. P 32,701,
Unempl.Ins.Rep. CCH 21,678
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW,
and Shirley Millard, Mary J. Simons,
Madeline Akerberg and Rosalie
Dion, Plaintiffs-Appellants,
v.
Donald A. JOHNSON, Director, State of Illinois Department of
Labor, and State of Illinois Bureau of Employment
Security, Defendants-Appellees.
 No. 81-1673.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 19, 1982.
Decided March 31, 1982.
 
 Jordon Rossen, Assoc. Gen. Counsel, UAW, Detroit, Mich., for plaintiffs-appellants.
 Imelda R. Terrazino, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before WOOD and ESCHBACH, Circuit Judges, and GORDON, District Judge.*
 ESCHBACH, Circuit Judge.
 
 
 1
 This case involves a challenge to the validity of two Illinois statutory provisions, now repealed, that governed the eligibility of women on pregnancy leave to receive unemployment benefits.[1] The issue on this appeal is whether the named plaintiffs are the proper parties to assert such a claim. Plaintiff International Union, United Auto Workers, brought this action on behalf of those of its members who were denied unemployment insurance benefits by virtue of the statutes in question. The first amended complaint added four plaintiffs who sue in their individual capacities and also seek to represent a class of all women similarly situated. The district court granted summary judgment in favor of defendants on the grounds that neither the union nor the named plaintiffs enjoy standing to raise the claims set forth in their complaint. For the reasons which follow, we affirm the district court's ruling with respect to the individual plaintiffs, but as to the union we reverse and remand for further proceedings.
 
 I.
 
 2
 Under the applicable Illinois statutory framework, an unemployed individual is entitled to receive unemployment benefits only if the Illinois Department of Labor finds that the applicant meets the eligibility requirements set forth in § 500 of the Illinois Employment Security Act, Ill.Rev.Stat. ch. 48, § 420. The most elementary standards are expressed in § 500 C of the Act, Ill.Rev.Stat. ch. 48, § 420 C, which requires that an applicant be "able to work, and ... available for work; provided that during the period in question (he or she) was actively seeking work." These general limitations are augmented by narrower rules which apply to specific circumstances.
 
 
 3
 Pregnancy leave used to be one such circumstance. Prior to October 1, 1972, § 500 C 4 set forth the following limitation:
 
 
 4
 A woman shall be presumed to be unable to work and unavailable for work if she has left her most recent work voluntarily because of pregnancy; provided, in any event, that a woman shall be deemed to be unable to work and unavailable for work with respect to the 13 weeks which immediately precede the anticipated date of childbirth and the 4 weeks which immediately follow such date.
 
 
 5
 Ill.Rev.Stat. ch. 48, § 420 C 4 (repealed 1972). The pregnancy leaves of the individual plaintiffs occurred after the foregoing provision was repealed; thus, while the union may have standing to challenge the former provision on behalf of union members who were subject to it, the individual plaintiffs clearly do not.
 
 
 6
 After the earlier provision was repealed in 1972, Section 500 C 4 expressed the pregnancy leave limitation as follows:
 
 
 7
 A woman shall be presumed to be unable to work and unavailable for work if, within thirteen weeks of the anticipated birth of her child, she has left her most recent work voluntarily because of pregnancy. Further, a woman shall be presumed to be unable to work if she is discharged because of pregnancy within eight weeks of the anticipated date of childbirth and her employer presents to the Director competent proof of her inability to work.
 
 
 8
 Ill.Rev.Stat. ch. 48, § 420 C 4 (repealed 1975). This provision was in effect during the pregnancy leaves of the individual plaintiffs. In 1975, the pregnancy-leave limitations were deleted from the Act altogether.[2]
 
 
 9
 Women who were deemed unable to work pursuant to the earlier provision, as well as women who failed to rebut the presumption of inability to work which was expressed in the amended provision, were rendered ineligible for unemployment benefits.
 
 II.
 
 10
 The order here under review relied in large part on extensive factual stipulations submitted by the parties in conjunction with cross-motions for summary judgment. Some of these stipulations pertain to the individual plaintiffs' compliance, or, rather, lack of compliance, with certain procedural prerequisites to the receipt of unemployment benefits.[3] However, the dispositive stipulation, on the view we take, is one which bears on their compliance with a basic substantive eligibility requirement quite distinct from the pregnancy-leave limitation. Plaintiffs stipulated that:
 
 
 11
 None of the named Plaintiffs actively sought work during the period of pregnancy related unemployment for which they now seek recovery ....
 
 
 12
 On the basis of this stipulation, the district court concluded that the individual plaintiffs could not satisfy the "actively seeking work" requirement of § 500 C. Since they were ineligible for benefits under this separate requirement, the district court determined that the individual plaintiffs lack standing to challenge the pregnancy-leave limitations.
 
 
 13
 Article III of the Constitution limits the jurisdiction of the federal courts to actual cases or controversies. The essential Article III standing question is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2204-2205, 45 L.Ed.2d 343 (1975) (emphasis in original) (citation omitted). Accordingly, the injury alleged must be such that it is likely to be redressed if the relief requested be granted. Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 44-45, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976).
 
 
 14
 Plaintiffs maintain that they have a personal stake in the outcome of this litigation inasmuch as they wish to apply for benefits without being subject to the pregnancy-leave limitations. Such a hypertechnical characterization of the nature of their claim is totally at odds with the practical analysis employed in the standing cases. In Linda R. S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), a woman who received no child support from the father of her illegitimate child sought federal injunctive relief against state officials who, while prosecuting fathers of legitimate children for nonsupport, refused to prosecute the fathers of illegitimate children. The Court concluded that the injury actually alleged was the father's nonsupport, as opposed to the state's failure to prosecute him. See id. at 618, 93 S.Ct. at 1149. Applying a similarly practical analysis, we conclude that the injury actually alleged in this case is a denial of unemployment benefits. Having thus identified the injury, we must proceed to determine whether there is any substantial likelihood that the individual plaintiffs' claims for unpaid benefits would be redressed by the relief they seek in this case.
 
 
 15
 The individual plaintiffs seek a declaratory judgment decreeing that the pregnancy-leave limitations are invalid and an injunction mandating that their applications for benefits be entertained without regard to those limitations. An award of such relief would be of no avail to plaintiffs if they are independently ineligible for benefits because they were not actively seeking work during their pregnancy leaves, as required by § 500 C.
 
 
 16
 Plaintiffs contend that the district court, in concluding that they were otherwise ineligible for benefits, improperly usurped the authority of the Illinois Department of Labor. This argument misconceives both the analysis of the district court and the holdings of the relevant cases. The Illinois cases upon which plaintiffs rely merely stand for the proposition that in determining an applicant's eligibility for benefits, the state labor agency is in the best position to weigh the evidence and arrive at findings of fact. See, e.g., Keystone Steel and Wire Division, Keystone Consolidated Industries v. Illinois Department of Labor, 37 Ill.App.3d 704, 346 N.E.2d 399 (1976). In this case, by contrast, the district court did not weigh the evidence and make factual findings. The crucial factual findings were supplied by plaintiffs' stipulations. The district court simply applied the law, as set forth in § 500 C, to the facts established by stipulation.
 
 
 17
 The district court's application of § 500 C is entirely consonant with the relevant Illinois case law. Just as the plaintiffs bear the burden of supplying facts supportive of their standing, see Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), as unemployment compensation claimants, they bear the burden of proving they were actively seeking work while on pregnancy leave, Brown v. Board of Review, 8 Ill.App.3d 19, 289 N.E.2d 40 (1972).
 
 
 18
 The stipulation that "(n)one of the named Plaintiffs actively sought work" during their pregnancy leaves is cast in precisely the same terms as § 500 C, which requires claimants to be "actively seeking work" during the period for which they seek unemployment benefits. This permits of no further analysis. The stipulation compels a determination that the individual plaintiffs were not in compliance with the "actively seeking work" requirement.[4]
 
 
 19
 Since the individual plaintiffs were not actively seeking work within the meaning of § 500 C during their pregnancy leaves, they were not denied benefits solely by virtue of the provisions they attack. They have failed to carry their burden of showing that their failure to secure unemployment benefits results from the enforcement of the pregnancy-leave provisions. "Speculative inferences are necessary to connect their injury to the challenged actions of (defendants)." Simon, supra, 426 U.S. at 45, 96 S.Ct. at 1927. The individual plaintiffs lack standing with respect to the claims presented because they are not in a position to assert a concrete injury that is likely to be redressed by a favorable decision on the merits of the case.
 
 III.
 
 20
 Unlike the district court's ruling as to the individual plaintiffs' standing, which was predicated on extensive factual stipulations, the district court's ruling as to the union's standing was confined to the allegations in the complaint. Since the union's standing was decided on the pleadings, this court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).
 
 
 21
 Even in the absence of injury to itself, an association may enjoy standing to sue on behalf of its members if (1) the conduct challenged is injurious to its members, (2) the claim asserted is germane to the association's purposes, and (3) the cause can proceed without the participation of the individual members affected by the challenged conduct. Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).
 
 
 22
 The association must allege that its members, or any of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.
 
 
 23
 Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975) (citation omitted).
 
 
 24
 The district court determined that the union lacked standing because there was no allegation that any of its members were denied benefits by virtue of the pregnancy-leave provisions. Although the complaint is by no means a model of precision on this point, it is reasonably susceptible to a more generous construction. Paragraph three of the first amended complaint alleges that plaintiffs seek to enjoin further enforcement of the pregnancy-leave limitations as against members of the union, among others. Paragraph six alleges, in pertinent part, as follows:
 
 
 25
 The UAW brings this action as an employer contributor to said Fund, on behalf of its women members who are or were employees under the Illinois Unemployment Compensation Act, citizens of the United States, women who were denied or disqualified from unemployment insurance benefits under former Section 500c(4)....
 
 
 26
 In spite of its syntactical ambiguities, paragraph six, when viewed in conjunction with the language of paragraph three, may be construed as an allegation that the union's members, or at least some of them, were precluded from receiving unemployment benefits solely because of the pregnancy-leave rules. As thus construed, the complaint sets forth a sufficient allegation of direct injury to the union's members by virtue of the challenged statutes.
 
 
 27
 Defendants advance the further argument that the union lacks standing because the rights asserted herein are not really germane to the associational ties of its members. It would be premature to resolve this question on the existing record. We merely hold that it was erroneous to enter summary judgment against the union. We do not hold that the union does have standing; we hold only that the complaint sets forth a sufficient allegation of one of the elements of associational standing: injury to some of the union's members. As to the other requirements for associational standing which were not addressed by the district court, we express no view. Our decision does not foreclose further scrutiny of the union's standing by the district court:
 
 
 28
 (I)t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.
 
 
 29
 Warth v. Seldin, 422 U.S. 490, 501-02, 95 S.Ct. 2197, 2206-2207, 45 L.Ed.2d 343 (1975). Finally, should the case go to trial with the union's standing unresolved, it remains open to defendants to contest the facts underlying this issue at trial. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 115, 99 S.Ct. 1601, 1615, 60 L.Ed.2d 66 (1979).
 
 
 30
 For the foregoing reasons, the district court's grant of summary judgment against plaintiffs Millard, Simons, Akerberg and Dion is affirmed, and the entry of summary judgment against plaintiff International Union, United Auto Workers is reversed and remanded for further proceedings consistent with this opinion.
 
 
 31
 Affirmed in part and reversed and remanded in part.
 
 
 
 *
 The Honorable Myron L. Gordon, Judge of the United States District Court for the Eastern District of Wisconsin, is sitting by designation
 
 
 [1]
 Two different versions of the pregnancy-leave limitation were set forth, over two separate periods of time, in § 500 C 4 of the Illinois Employment Security Act. The original version, repealed in 1972, provided that:
 A woman shall be presumed to be unable to work and unavailable for work if she has left her most recent work voluntarily because of pregnancy; provided, in any event, that a woman shall be deemed to be unable to work and unavailable for work with respect to the 13 weeks which immediately precede the anticipated date of childbirth and the 4 weeks which immediately follow such date.
 Ill.Rev.Stat. ch. 48, § 420 C 4 (repealed 1972).
 The subsequent version, which became effective in 1972 and was repealed in 1975, provided that:
 A woman shall be presumed to be unable to work and unavailable for work if, within thirteen weeks of the anticipated birth of her child, she has left her most recent work voluntarily because of pregnancy. Further, a woman shall be presumed to be unable to work if she is discharged because of pregnancy within eight weeks of the anticipated date of childbirth and her employer presents to the Director competent proof of her inability to work.
 Ill.Rev.Stat. ch. 48, § 420 C 4 (repealed 1975).
 
 
 [2]
 In Turner v. Department of Employment Security, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975), the Supreme Court held invalid under the fourteenth amendment a Utah statute which rendered pregnant women ineligible for unemployment benefits for a period from 12 weeks before the anticipated date of birth until six weeks after childbirth
 
 
 [3]
 The individual plaintiffs failed to observe such formal requirements as submitting completed application forms and registering for job openings with the state employment agency. After inquiring at an unemployment office about the availability of benefits and having been advised that she was not eligible, plaintiff Akerberg never submitted an application. Having examined a booklet which explained the eligibility rules, plaintiff Simons concluded that she was ineligible because she was pregnant and pursued the matter no further. We express no view as to whether the failure to file application forms renders the individual plaintiffs without standing to complain of the pregnancy-leave limitations
 
 
 [4]
 Plaintiffs argue that they could apply to the state for a waiver of this requirement on the ground that the pregnancy-leave provision dissuaded them from observing the other eligibility requirements. They do not claim to be entitled to such a waiver, nor do they assert that there is any substantial likelihood that it would be granted