Judith GROGG, Edith G. Altier, Kay R. Bochert, Linda Callahan, Rosa Johnson, Carla C. Kocher, and Barbara N. McKnight, on behalf of themselves and on behalf of all persons similarly situated, and Barbara Nersinger, Frances J. Turnipseed, International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, an unincorporated association, International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, Local 416, an unincorporated association, International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, Local 509, an unincorporated association, International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, Local 717, an unincorporated association, International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, Local 755, an unincorporated association, and International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, Local 801, an unincorporated association, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 73 Civ. 63 (KTD).

United States District Court, S.D. New York.

June 6, 1985.

Abourezk, Sobol & Trister, and Robert Friedman, Washington, D.C., for Union plaintiffs; Richard B. Sobol, Michael B. Trister, Washington, D.C., of counsel.

Lewis, Greenwald, Kennedy & Lewis, P.C., New York City, for Class plaintiffs; Nicholas F. Lewis, New York City, of counsel.

Parker Auspitz Neesemann & Delehanty, P.C., New York City, for defendant; Nathony M. Radice, Charles S. Berquist, Charles L. Kerr, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

This action was instituted pursuant to the Civil Rights Act of 1964 in January of 1973 by and on behalf of nine female employees and other union and nonunion employees similarly situated and the International Union of Electronic, Electrical, Tech-

nical, Salaried and Machine Workers ("IUE") and several of its locals to challenge certain practices of defendant General Motors Corporation ("GM") as discriminatory. Specifically, Count I of the complaint contained allegations concerning the limitation by GM of sickness and accident benefits for pregnancy to six weeks. Count II dealt with the mandatory maternity leave policy of GM. Finally, in Count III, plaintiffs alleged that GM discriminated against female employees by refusing to pay them sickness and accident benefits for disability due to bilateral tubal ligation surgery.

During the early stages of this litigation, three subclasses separated by Count were certified and Count I was dismissed. *See Grogg v. General Motors Corp.*, 72 F.R.D. 523 (S.D.N.Y.1976); *Grogg v. General Motors Corp.*, 444 F.Supp. 1215 (S.D.N.Y. 1978).

In December 1971, GM had formally discontinued its mandatory maternity leave policy and the new collective bargaining agreement, effective November 22, 1976, provided that certain elective surgical procedures such as tubal ligations would be covered by disability benefits. Thus, Counts II and III, insofar as they sought declaratory relief, became substantially moot. In addition, on October 31, 1978, Title VII was amended to prohibit sex discrimination on the basis of pregnancy. Accordingly, in 1978, the parties, including the IUE, entered into settlement negotiations to resolve the residual aspects of the case. Pursuant to my Order, during the settlement negotiations, IUE house counsel Winn Newman, Esq., who was participating in the discussions, engaged as independent outside counsel, the law firm of Abourezk, Sobol & Trister ("Abourezk"). In November of 1979, the settlement agreement was submitted to me for approval. The union plaintiffs joined the UAW in filing objections to the proposed settlement. The first proposed settlement was not approved because the cut-off date for Count II claims excluded class members who were forced to take involuntary maternity leave between April and December of

1971. *See Grogg v. General Motors Corp.*, 529 F.Supp. 293 (S.D.N.Y.1981).

Thereafter, settlement negotiations were resumed and resulted in an August 5, 1983 Stipulation of Settlement. The second settlement, which was ultimately approved by an October 28, 1983 Judgment and Order, provided no relief on Count I, but provided for a fund of $600,000 to $800,000 for the payment of eligible claims of Count II subclass members and for payments of $200 for each eligible claim submitted by Count III subclass members. The individual plaintiffs who were represented by the law firm of Vladeck, Waldman, Elias & Engelhard, P.C. ("Vladeck") settled with GM its claim pursuant to 42 U.S.C. § 2000e–5(k) for attorneys' fees. The two other firms involved in this matter now move for an interim award of attorneys' fees and litigation expenses.

First, the law firm of Lewis, Greenwald, Kennedy & Lewis, P.C. ("Lewis"), asserts that it is entitled to an attorneys' fees award as it acted as co-counsel with Vladeck for the individual plaintiffs after the death of Irving Abramson, Esq. who, before his death, had been Vladeck's co-counsel. (Vladeck's fees included the fees generated by Abramson's work). Second, the Abourezk law firm which represented the union plaintiffs, including the IUE, seeks an attorneys' fees award. GM opposes both applications.

## DISCUSSION

 Section 706(k) of Title VII to the Civil Rights Act of 1964 ("the Act") provides in part that the court, in its discretion, may allow a "prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 2000e–5(k). Only "prevailing parties" may recover attorneys' fees under section 1988. A plaintiff may be considered a prevailing party if " 'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting

*Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). Reasonable attorneys' fees are ordinarily granted to prevailing plaintiffs absent special circumstances. *See Albermarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975). Furthermore, a party who secures substantial relief by way of settlement has been found to constitute a "prevailing party." *See Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *Mendoza v. Blum,* 560 F.Supp. 284, 287 (S.D.N.Y.1983).

### A. *Lewis, Greenwald, Kennedy & Lewis, P.C.*

Lewis claims that it is entitled to an interim award of attorneys' fees in the amount of $17,362.50 because it substituted for Irving Abramson, Esq. as co-counsel with Vladeck for the individual plaintiffs after Mr. Abramson died in January 1981. Although GM did not object to the payment of Mr. Abramson's fees as part of its settlement with Vladeck, it does object to paying the fees of the Lewis firm arguing that neither GM nor Vladeck ever recognized Lewis as co-counsel.

Furthermore, GM asserts that no significant relief was procured by Lewis for its clients. GM notes that the Lewis firm submitted retainer agreements in 1981 for three individually-named plaintiffs which indicate that only two of the three, Ms. Grogg and Ms. Altier, will recover under the settlement. The third individual, Barbara McKnight, will not recover because her allegedly mandatory maternity leave began on April 15, 1971, one day before the maternity leave date used as a cut-off for valid claims. The recovery by the two plaintiffs represented by the Lewis firm apparently will be, solely by virtue of their being members of the Count II subclass, approximately $750 each. GM states also that the recovery by the two plaintiffs represented by Lewis would be the same if Vladeck alone represented the individual plaintiffs.

In further opposition to Lewis' claim, GM asserts that the law firm's role in the nego-

tiation of the second settlement was "largely, if not completely, duplicative and redundant of the representation provided to the class by the Vladeck firm." Affidavit of Anthony M. Radice ¶ 8. The Lewis fee application contains a request for 43 hours expended prior to June of 1981. GM objects to those fees—as being incurred prior to the time Lewis represented anyone in this matter. Finally, GM asserts that any award to Lewis should be substantially reduced.

■ There is no dispute that pursuant to my Order the Lewis firm was substituted properly for Mr. Abramson. Once the substitution became effective in June 1981, it appears that the Lewis firm diligently attended all negotiation sessions and conferences. Abramson was the original counsel for the individual plaintiffs and it was he who retained the Vladeck firm as co-counsel. At the time of the proposed substitution, I considered the Vladeck firm's objections to the substitution of Abramson by the Lewis firm. Ultimately, however, I decided that such substitution was proper. It is inconsistent for GM to recognize that Mr. Abramson represented prevailing parties but not to recognize that Mr. Abramson's successor did so. The fact that by reason of the settlement, two of the individuals represented by the Lewis firm will recover only $750 each does not preclude a finding that substantial relief has been procured for those two women and other members of the class who did not sign retainer agreements with the Lewis firm.

■ For the above reasons, I find that the plaintiffs represented by the Lewis firm are prevailing parties within the meaning of the Act. The fees claimed for work performed prior to the effective date of the substitution order, however, are disallowed as I find Lewis' representation of the individual plaintiffs was duplicative with Mr. Abramson's representation. Furthermore, from Lewis' submissions, it is apparent that most of the effort by the Lewis firm prior to its substitution as counsel was directed at becoming familiar with the case, locating files in the courthouse, and prepar-

ing the motion for substitution. Such time was not reasonably expended and is therefore not compensable.

 Furthermore, the fees requested by Lewis for work performed after the substitution of counsel became effective must be reduced because there was substantial duplication of effort with the Vladeck firm. In addition, some of the descriptions of the work performed are vague and therefore not susceptible to a determination of whether the time was reasonably expended. Finally, 20 percent of the fees claimed represent the time expended in the preparation of the attorneys' fees' application. Although ordinarily the time spent in preparing an attorneys' fees' application is compensable, see Gagne v. Maher, 594 F.2d 336, 344 (2d Cir.1979), the time must nevertheless have been reasonably expended. Accordingly, the total of 159.25 hours less 43 hours claimed for pre-June 1981 work, or 116.25 hours, will be reduced by 50 percent. A total of 58.13 hours will therefore be compensable; 6.33 hours for the work of Everett E. Lewis and 51.80 hours for the work of Nicholas F. Lewis.

 The Lewis firm suggests as reasonable hourly rates, $100 per hour for Nicholas F. Lewis and $150 per hour for Everett E. Lewis. The twelve factors that are relevant in determining the amount of the fee are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly;" (4) the preclusion to the attorney of alternative employment; "(5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations ...; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Hensley, 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3. Based on an assessment of the above factors, I conclude that the hourly rates sought by the Lewis firm must be reduced.

 For example, by the time that the Lewis firm became involved in this matter, many of the more complex issues had already been resolved through caselaw, negotiations, or legislation. Furthermore, the Lewis firm does not dispute that the Vladeck firm was primarily involved with the negotiation of the settlement. And, although clearly not dispositive, it is relevant that the two plaintiffs represented by the Lewis firm will, as a result of the settlement, receive only $750 each. Furthermore, the Second Circuit has stated that, for multi-year litigation, historic, not current, rates are properly utilized in computing a fee award. See Asociation for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1153 (2d Cir.1983). Thus, the work of Nicholas Lewis must be compensated at associate, not partner, rates because he did not become a partner until 1984. Accordingly, Everett E. Lewis' time will be compensable at $130 per hour and Nicholas F. Lewis' time will be compensable at $70 per hour.

## B. Abourezk, Sobol & Trister

The IUE and IUE locals 416, 509, 717, 755, and 801 ("the union plaintiffs"), move for an interim award of attorneys' fees in the amount of $92,136.25 plus $4,745.56 in expenses. The breakdown of the requested fees is as follows:

| Attorney | Hours | Rate | Fee Requested |
|----------|-------|------|---------------|
| Richard B. Sobol | 158.75 | 175 | $ 27,781.25 |
| Michael B. Trister | 196.75 | 175 | 34,431.25 |
| Steven G. Liss | 65.00 | 100 | 6,500.00 |
| Ann H. Franke | 208.25 | 100 | 20,825.00 |
| Law Students/ Paralegal | 74.25 | 35 | 2,598.75 |
| | | TOTAL | $92,136.25 |

GM opposes the application by the union plaintiffs arguing that they are not "prevailing parties" within the meaning of the Act and that the union plaintiffs' request for fees is grossly disproportionate to their role in the proceedings leading to settlement. Alternatively, GM argues that the fees requested should be reduced.

GM asserts that the union plaintiffs are not prevailing parties because (1) they were parties only to Count I of the complaint and that Count I was dismissed by me for failure to state a claim, (2) they had no standing to pursue the monetary claims which remained after the discontinuance of the challenged practices, and (3) they did not play a significant role in obtaining the results in the litigation.

The unions contend that the case was initially commenced in 1973 by the union plaintiffs through union counsel as part of a comprehensive program to combat sex discrimination against its female members, specifically as it pertained to pregnant women. Furthermore, they assert that they contributed significantly to the settlement negotiations. For example, the first settlement was objected to by the unions on six grounds; one ground was that a certain portion of the class was excluded from eligibility. The first settlement was disapproved on that basis and the second settlement agreement reflected changes based on the other objections.

■ The union plaintiffs may be considered prevailing parties under the circumstances of this case if they qualify as parties who have secured substantial relief by way of the approved settlement. *See Maher*, 448 U.S. at 129, 100 S.Ct. at 2574. GM does not dispute that the IUE and its locals played an active role in this litigation. The IUE house counsel, Winn Newman, Esq., was joined by the Abourezk law firm after the unions were ordered by me to retain independent counsel. The request for fees by the Abourezk firm does not include any claim for fees arising from Newman's work as the 1983 Stipulation of Settlement provided specifically that the unions' house counsel waived all claims to attorneys' fees.

The union plaintiffs actively participated in the settlement of this matter. Because they refused to waive their claim for attorneys' fees, however, they were not signatories to the first stipulation of settlement. In the second stipulation of settlement, it was provided that the union plaintiffs had the right to apply to the court for an allowance of attorneys' fees and expenses with reference only to the services performed by outside counsel. GM reserved the right to object to such an application.

■ Contrary to GM's assertion, it is unimportant, in ascertaining whether the union plaintiffs are prevailing parties, that Count I of the complaint—the only count alleging injury by the union itself—was dismissed by me. It was alleged in Count I that the union had attempted unsuccessfully to convince GM to drop its six-week limitation on disability benefits for pregnancy-related disability; therefore, the unions alleged that it was subject potentially to actions arising from the inclusion of that provision in the collective bargaining agreement. Similar allegations were not included in Counts II and III because the collective bargaining agreement did not contain provisions pertaining to GM's practices challenged in such counts. Thus, the unions' role in prosecuting the claims in the last two counts was not limited by the allegations of the first claim. Consequently, I reject GM's argument that the union plaintiffs were plaintiffs only with respect to Count I.

■ The same is true with reference to the lack of union standing to assert claims for monetary damages which is all that remained after the practices challenged in Counts II and III were discontinued. Section 706(f)(1) of the Act provides that an enforcement action may be brought by "any person claiming to be aggrieved." 42 U.S.C. § 2000e–5(f)(1). A labor organization has been found to constitute a "person aggrieved" and may therefore seek relief, monetary or otherwise, on behalf of its members. *See Franks v. Bow-*

man Transportation Co., 424 U.S. 747, 764 n. 21, 96 S.Ct. 1251, 1264 n. 21, 47 L.Ed.2d 444 (1976) (legislative history to 1972 Amendments indicates approval of prior caselaw); *Local 186, International Pulp, Sulphite and Paper Mill Workers v. Minnesota Mining and Manufacturing Co.*, 304 F.Supp. 1284, 1294 (N.D.Ind.1969). *See also International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1266–69 (4th Cir. 1981) (fact that union did not allege injury to itself as an entity does not preclude standing); *Equal Employment Opportunity Commission v. Printing Industry of Metropolitan Washington, D.C., Inc.*, 92 F.R.D. 51, 53 (D.D.C.1981) (policy considerations weigh strongly in favor of according union standing to assert its members' Title VII claim). Even assuming that the union plaintiffs lacked standing,[1] GM had its opportunity during the litigation to challenge the standing of the unions but did not do so. Thus, GM's argument is untimely and therefore would not serve as a bar to a fee recovery.

■■■ GM's assertion that the union plaintiffs may not recover attorneys' fees because it did not play a significant role in the litigation in that the unions had filed objections to the settlement is also rejected. There is nothing to indicate that the unions attempted to sabotage settlement negotiations. The fact that objections were filed with the court based on feedback received after information concerning the settlement was disseminated to the class members does not support the conclusion that the union plaintiffs are not prevailing parties. If anything, such objections are of extreme importance and assistance to the court in the analysis for approval or disapproval of the settlement of a class action. Furthermore, the arguments advanced by

both the union plaintiffs and GM over whether or not the second settlement was an improvement over the first settlement is irrelevant to a finding that the union plaintiffs are prevailing parties. There is no way of knowing whether the members of the class would have benefited more under the uncertain arrangement of the first settlement.

■■■ For all of the above reasons, I conclude that the union plaintiffs are prevailing parties within the meaning of the Act. An award under 42 U.S.C. § 2000e–5(k), however, may only be made for time *reasonably* expended. In order to ascertain whether the requested fees are reasonable, adequate records of the time spent must be reviewed. In the instant case, the majority of the law firm's notations on the contemporaneous time records (numbers which correspond to a description of the work) are either overly vague or totally illegible. For example, I have no idea, nor has the firm indicated to me, what the subject matter of the many hours of office study was. There can be no meaningful review of such time records. I have no doubt that substantial time was expended in connection with this matter but given the inadequate nature of the records submitted and the duplication of effort by the Abourezk firm with the Vladeck firm, the hours worked must be reduced by 50 percent.

■■■ In addition, the requested rate of $175 per hour for the work of Mr. Sobol and Mr. Trister, and $100 per hour for the work of Mr. Liss and Ms. Franke and $35 per hour for paralegals and students must be reduced. I find that reasonable rates would be $130, $70, and $25 per hour, re-

---

1. The cases cited by GM in support of its proposition that unions may not pursue the monetary claims of its members are, for the most part, distinguishable because the lawsuits were not predicated upon Title VII or did not squarely decide the issue. *See, e.g., International Union, United Automobile Aerospace and Agricultural Implement Workers of America v. Johnson*, 674 F.2d 1195, 1199–1200 (7th Cir.1982) (summary

judgment against the union reversed because complaint could be construed to allege injury to some of the union's members). *Grocery Manufacturers of America, Inc. v. Gerace*, 581 F.Supp. 658 (S.D.N.Y.1984) cited by GM is totally and completely inapposite and apparently was cited merely to show that GM's attorneys had read recent decisions which I authored.

spectively. Accordingly, the fee award to the Abourezk firm is as follows:

| Attorney | Hours | Rate | Fee |
|----------|-------|------|-----|
| Richard B. Sobol | 79.33 | 130 | $ 10,319.40 |
| Michael B. Trister | 98.38 | 130 | 12,789.40 |
| Steven B. Liss | 32.50 | 70 | 2,275.00 |
| Ann H. Franke | 104.13 | 70 | 7,289.10 |
| Law Students/ Paralegals | 37.13 | 25 | 928.25 |
| | | TOTAL | $33,601.15 |

Thus, a total of $33,601.15 in attorneys' fees plus $4,745.56 in expenses is recoverable by the union plaintiffs. A total of $4,455.40 in attorneys' fees is recoverable by the individual plaintiffs represented by the Lewis firm. Judgments shall be submitted in ten (10) days on five (5) days' notice.

SO ORDERED.