W. John BURSTON, Jr., Plaintiff,

v.

COMMONWEALTH OF VIRGINIA, et al., Defendants.

Civ. A. No. 83–0483–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 28, 1984.

James K. Cluverius, Little, Parsley & Cluverius, P.C., Richmond, Va., Mary M. Levy, Elliott C. Lichtman, James C. Turner, Rauh, Silard & Lichtman, P.C., Washington, D.C., for plaintiff.

Gerald L. Baliles, Atty. Gen., J. Westwood Smithers, Jr., Sr. Asst. Atty. Gen., Michael E. Ornoff, Elizabeth C. Gay, Asst. Attys. Gen., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

The matter now before the Court deals with the fixing of attorneys' fees. In its order of April 20, 1984, the Court held that "plaintiff is entitled ... to his costs and attorneys' fees for this action."[1] Counsel for the parties have failed to agree on an appropriate award. Consequently, they have briefed and orally argued the issue, which is now ripe for disposition.

### I. Background

The facts of this case are more fully set out in the Court's Memorandum of April 20, 1984. Some of the more salient aspects are repeated here to provide an appropriate background for the disposition of this fee application.

Plaintiff, a black male, was employed by the Commonwealth of Virginia's Department of Computer Services (the "DCS"), from 1976 to February 10, 1983. In January, 1981 he was appointed EEOC officer at his DCS location, a position he retained until his discharge. As an EEOC officer, he vigorously advocated certain complaints and views in reference to discrimination by his employer.

Between the autumn of 1980 and February 10, 1983, plaintiff, though qualified, was passed over for two promotions for which he applied; he was later demoted, and eventually was discharged on February 10, 1983. Plaintiff filed this suit, aris-

1. The Court has discretion to award attorneys' fees to plaintiff, who is the prevailing party here, under both 42 U.S.C. § 1988 (for prevail- ing on certain of his claims brought under 42 U.S.C. § 1981) and 42 U.S.C. § 2000e–5(k) (for prevailing on certain of his Title VII claims).

ing essentially out of this series of events, on August 8, 1983, against DCS and several of its supervisory and administrative employees. He based his suit on 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. §§ 1981, 1983, and several pendent state causes of action.[2] As relief for his Title VII claim, plaintiff sought reinstatement, backpay, costs and attorneys' fees. For his other claims, plaintiff sought—in addition to the same relief he sought under Title VII—compensatory and punitive damages.

On January 12, 1984, the Court dismissed certain of plaintiff's claims: the Section 1981 and 1983 claims against the DCS, and against its defendant employees in their official capacity insofar as monetary relief was sought. The remaining claims went to trial, where plaintiff prevailed in his Title VII claim with respect to all of defendants' conduct except for their ultimately discharging him, which the Court found justified.[3] Plaintiff received $17,311 for backpay relief, and was, of course, held entitled to attorneys' fees; but the Court denied plaintiff's prayer for reinstatement. The Court held that its analysis of plaintiff's Title VII claim was equally applicable to his surviving § 1981 claims and assumed, *arguendo,* that his surviving § 1983 claims

were similarly successful; however, the Court found that no further relief authorized under those sections—*i.e.,* compensatory or punitive damages—would be appropriate. As for plaintiff's pendent state claims, the Court declined to consider them.

Subsequent to the Court's order of April 20, 1984, defendants filed a motion for the Court to reconsider its Findings of Fact and Conclusions of Law in the case, which the Court denied. Plaintiff then applied for his award of costs and attorneys' fees. He now seeks $82,109.25 in fees and $5,347.62 in expenses and costs.[4] Defendants do not present a specific lower dollar amount that they feel would be appropriate, but do challenge a number of items in plaintiff's application.

*II.   General Principles Governing Attorneys' Fee Awards.*

█ The general principles governing the amount of fee awards, where a statute authorizes the district court to award fees in its discretion to the prevailing party, are well developed. District courts are obliged to set out "detailed findings of fact" concerning attorneys' fee awards, in relation to twelve factors.[5] *Barber v. Kimbrell,*

---

**2.** These state causes of action were: breach of contract, a common law claim of tortious interference with employment, and a statutory claim of unlawful combination to injure others in their trade, business, etc.

**3.** After an auto accident on January 9, 1983, plaintiff did not report to work at DCS from January 12, 1983 until he was discharged. He produced two medical reports stating that he was "totally incapacitated," and collected sick leave pay from the Commonwealth during this time. But he also worked throughout this period for Burlington-Northern Air Freight Company, where he performed duties similar to his duties at DCS. The Court found that such conduct by plaintiff was DCS's legitimate and non-discriminatory reason for discharging plaintiff.

**4.** Plaintiff, in his original application for costs and attorneys' fees, sought somewhat less than he now seeks in attorneys' fees: $78,050.50, instead of $82,109.25. The higher amount now sought reflects an increase in hours by attorneys Lichtman (17 more hours) and Levy (22.75 more hours) from the time the original application was filed. This increase in hours apparent-

ly reflects the additional work related to (i) preparing and drafting plaintiff's reply to defendant's brief in opposition to plaintiff's fee application; (ii) preparing for the hearing on the application; and (iii) settlement discussions on the proper amount of a backpay award.

Plaintiff continues to seek $5,347.62 in costs and expenses.

**5.** Those twelve often-recited factors are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. 577 F.2d at 226 n. 28.

577 F.2d 216, 226, 226 n. 28 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). The basic approach is to multiply the customary hourly rate for the services rendered by the number of hours reasonably expended; the product of these two is the so-called "lodestar" figure. The lodestar is then adjusted on the basis of numerated other factors, which are the same as the last seven of the twelve factors recognized in *Barber v. Kimbrell, supra*, as appropriate considerations in awarding attorneys' fees. *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir.1981).

▇▇▇ The Supreme Court has recently endorsed approaches to attorneys' fee determinations similar to the formulation articulated by the Court of Appeals for the Fourth Circuit in *Anderson. See Blum v. Stenson,* ── U.S. ──, ── ── ──, 104 S.Ct. 1541, 1543–44 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 430–35, 103 S.Ct. 1933, 1938–40, 76 L.Ed.2d 40 (1983). In addition, the Supreme Court, in *Hensley,* emphasized the importance of one of the twelve factors cited in *Barber,* the relationship between "results obtained" and the fee award. If a plaintiff does not prevail on claims that are "unrelated" to the claims on which the plaintiff succeeded, the district court may not award fees for services rendered on the unsuccessful, unrelated claim. *Hensley, supra,* 461 U.S. at 435, 103 S.Ct. at 1940. Further, the Court must consider whether plaintiff's level of success makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.*

### III. Customary Hourly Rates.

Plaintiff seeks compensation for his counsel as follows: $125 per hour for partners from his lead firm, Rauh, Silard, and Lichtman (RSL), of Washington, D.C.; $100 per hour for the partner serving as local counsel, of Richmond, Virginia; and $85 per hour for all associates, including the associate of the partner serving as local counsel. Plaintiff has submitted extensive documentation to support these rates, including several affidavits as well as court cases from both the Eastern and Western Districts of Virginia and the D.C. District.

Defendants object to the rates sought by RSL counsel. The factual basis for their contention is that RSL initially contracted with plaintiff to charge $95 per hour for partners' time and $60 per hour for associates' time.

The relevant rate is the customary hourly rate, or, as the Supreme Court has recently characterized it, "the prevailing market rates in the relevant community." *Blum, supra,* ── U.S. at ──, 104 S.Ct. at 1545. The Supreme Court has further clarified that the "prevailing market rate" is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* ── U.S. at ──, n. 11, 104 S.Ct. at 1547, n. 11. The Supreme Court expressly rejected the argument that attorneys' fees should be awarded on a cost-based standard rather than a market rate. *See Id.*

▇▇▇ Plaintiff has satisfied the Court that the hourly rates of $125 for partners and $85 for associates at RSL are the appropriate rates under the standards articulated in *Blum.* Although plaintiff's counsel did contract at a lower rate than what they now seek, they have suggested that one reason for the lower rate was plaintiff's modest resources. The evidence at trial satisfies the Court of the fact of plaintiff's modest resources. Plaintiff's counsel also point out that plaintiff will probably not be able to pay even these lower rates in the foreseeable future. In effect, the lower rates appear to have reflected some *pro bono* consideration by plaintiff's counsel. In any event, the contracted-for rates do not reflect prevailing market rates for RSL's work in cases such as this, as evidenced in affidavits by numerous attorneys and several court cases. It is the prevailing market rate that is presumed to be reasonable, and to which plaintiff is enti-

tled in determining court-awarded attorneys' fees.[6]

As discussed *supra*, plaintiff also seeks compensation for his local counsel at their prevailing market rates, which he asserts are $100 per hour for the partner, Mr. Cluverius, and $85 per hour for the associate, Mr. Cann. He supports these rates with several uncontradicted affidavits from other attorneys in the Richmond area.

█ The Court notes, however, that services rendered by local counsel are not necessarily the same as the services involved in being lead counsel in a suit such as this. Such was the situation here. Local counsel was required in this case by Local Rule 7(D), which mandates that "foreign attorneys" practice before this Court only if they are associated with local counsel who accompany them at court appearances and who sign pleadings and notices filed with the Court. Plaintiff sought an exemption from this requirement, which the Court denied. Local counsel's work accounted for 46.28 of the 773.28 hours spent by plaintiff's counsel in this case for which plaintiff seeks an award. The description of local counsel's work indicates that much of it involved advising on local rules, reviewing documents, or making court appearances. In light of all these circumstances, the Court finds that local counsel, though competent and diligent, should be compensated at rates somewhat less than the rates for actually conducting

a case such as this. The Court finds hourly rates of $75 for the partner involved, and $45 for the associate, to be fair.

## IV. Reasonable Hours.

Plaintiff seeks a fee award based on a total of 773.28 attorney-hours. This primarily represents the work of two attorneys from RSL (714.0 hours); it also includes the work of several other RSL attorneys, along with the work of the two attorneys associated with the case as local counsel. These hours were accumulated over a year's time, from June 1, 1983, with an initial review of documents from plaintiff, to July 9, 1984, with the filing of plaintiff's reply to defendant's opposition to plaintiff's application for attorneys' fees.

### A. Unsuccessful, Unrelated Claims

█ At the outset, the Court recognizes that a "prevailing party" cannot be compensated for hours spent on unsuccessful unrelated claims, as discussed *supra*. Plaintiff did fail on several of his claims, which are discussed, *supra*. The Court must now determine whether any of these unsuccessful claims were "unrelated" so as to preclude plaintiff's recovery for work devoted to them.[7]

Here the plaintiff lost the aspect of his legal claim arising out of his ultimate discharge from DCS. One form of relief he

---

6. Defendants cite several cases for their contention that plaintiff cannot be awarded more than his contract rate for attorneys' fees. *See John-son v. Georgia Highway Express*, 488 F.2d 714, 718 (5th Cir.1974); *Exhibitors' Service, Inc. v. American Multi-Cinema, Inc.*; 583 F.Supp. 1186, 1189-92 (C.D.Cal.1984); *Sisco v. J.S. Alberici Construction Co., Inc.*, 564 F.Supp. 765, 767-68 (E.D.Ms.1983); *Computer Statistics, Inc. v. Blair*, 418 F.Supp. 1339, 1351 (S.D.Tex.1976). None of these cases, however, had the benefit of the Supreme Court's ruling in *Blum*, which requires counsel's lodestar amount to be calculated using prevailing market rates. A contract rate does not always reflect the customary market rate for similar services. Where the contract rate is lower than the market rate, and where that lower contract rate appears to reflect special billing considerations, there is no reason to hold plaintiff to the lower-contract rate in computing the lodestar amount.

Defendants also attempt to support their position with the Supreme Court's statement in *Hensley* that "hours ... not properly billed to one's *client* also are not properly billed to one's adversary." *Hensley, supra*, 461 U.S. at 434, 103 S.Ct. at 1940. As defendants themselves recognize, however, this refers to the proper practice in computing hours, not hourly rates. If taken to refer to hourly rates, as defendants would read it, the statement would undermine the Supreme Court's subsequent statement in *Blum* that the prevailing market rate, not a cost-based rate, is the appropriate standard.

7. As the Supreme Court has recognized, "there is no certain method of determining when claims are 'related' or 'unrelated.'" *Hensley, supra*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12.

sought—his reinstatement—was therefore denied. Nevertheless, the Court finds that plaintiff's discharge was related to the successful aspects of his claims, arising out of other conduct by defendants towards plaintiff. DCS's discharge of plaintiff was part and parcel of a series of events between plaintiff and defendants, occurring within a relatively short time span in one particular setting, relating to defendants' race-based discrimination against plaintiff in the work place. Further, the legal bases for plaintiff's unsuccessful complaint over his discharge were identical to the legal bases for the successful aspects of his claims. Under these circumstances, the Court sees no valid reason for finding that the unsuccessful discharge aspect of plaintiff's claim was unrelated to the successful aspects of his claims.

Plaintiff also failed to prevail on several aspects of his claims under Section 1981 and 1983, because of immunities doctrines. But these claims arose out of the identical set of events as his successful claims. There is no reason to characterize such claims as unrelated, and defendants do not contend that they are.

Additionally, plaintiff did not prevail on his pendent state claims. Rather, the Court exercised its discretion not to rule on those claims. Defendants contend that these are unsuccessful, unrelated claims, and the total hours claimed by plaintiff's counsel should be reduced and reflected in a substantial reduction in the Court's award. The Court disagrees. It is true that some of the pendent state claims are based on legal theories, such as breach of contract, that are not necessarily associated with civil rights and employment discrimination. However, plaintiff was seeking exactly the same relief, against the same defendants, based on the same nucleus of facts, under these alternative state claims as were involved in his Section 1981 and 1983 claims. Under these circumstances, the Court does not find these pendent state claims to be unrelated.

**B. *Excessive, Redundant, Unnecessary Hours.***

■ Defendants have marshalled a number of arguments for their contention that the hours for which plaintiff seeks to compensate his counsel are excessive. The law is clear that a fee award should not compensate work that is "excessive, redundant, or otherwise unnecessary," *see Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1940.

■ Defendants call attention to the hours spent by plaintiff's counsel on six specific items, including the preparation and drafting of the initial complaint, and the preparation and drafting of plaintiff's Exhibit List and his Proposed Findings of Fact and Conclusions of Law. The Court has reviewed the explanations for these hours that plaintiff's counsel have proferred in the affidavits attached to plaintiff's reply. The Court is satisfied that the hours spent were generally reasonable, although there may have been some lapses in "billing judgment." [8] To the extent that there were such lapses, they are accounted for by the Court's twenty percent reduction of hours for billing judgment, discussed *infra.* No additional reductions need be made with respect to these specific items.

■ Defendants also criticize plaintiff's decision to obtain counsel from Washington, D.C., rather than Richmond. They seek thereby to reduce the hours submitted by plaintiff for so-called duplicative work of local counsel (presumably their appearances before the Court, and preparation for those appearances), and for hours necessitated by lead counsel's lack of familiarity with the procedures existing in the Eastern

---

**8.** For example, plaintiff's attorneys have submitted 5.5 hours in connection with the initial pretrial conference, which was a very brief, routine affair. The time included several hours "in transit, waiting and attendance" by Mr. Lichtman and local counsel, and several hours of research time in anticipation of possible oral argument over defendants' motion to dismiss. While this reflects careful preparation, which is admirable, the Court believes that it would not reflect billing judgment to charge a client (or an adversary who is liable for fees) for all the time involved.

District. But the conclusion that many attorneys in the Richmond area would be reluctant to represent plaintiff in a case of this nature is understandable, as an affidavit plaintiff has submitted supports.[9] These cases are both time-consuming and hard fought. An element of financial risk is always present when one is dealing with a litigant of modest means—this is especially so when the adversary, as here, has the support of the state's resources. Further, plaintiff sought and was denied an exemption from the Local Rule 7(D), which requires "foreign attorneys" to associate themselves with local counsel to appear in and sign the pleadings in any case in the District. It would be inappropriate to characterize the time so spent by local counsel as unnecessary and uncompensable. Further, the Court notes that it has already diminished the hourly rate at which local counsel should be compensated, for the reasons stated *supra*.

The Court notes that defendants have submitted and argued in their brief from an affidavit by a local attorney, in which he states his opinion that the hours claimed by plaintiff are unreasonably high, based on his own experience in nine cases of employment discrimination since 1983, and his view of the experience of plaintiff's counsel and the nature of plaintiff's claims. The Court appreciates this opinion, but prefers to rely on its own review of the fee application in this case. The Court is not unfamiliar with this case—nor is it unversed in employment discrimination cases in general.

While the Court has rejected defendants' specific arguments about excessive or redundant hours, the Court does believe that some reduction is appropriate. The Court has reviewed the hours for which plaintiff seeks attorneys' fees, and concludes that the total hours should be reduced across the board by 20%, to account for an apparent absence of "billing judgment." It appears that plaintiff's counsel have submitted hours for most, if not every, hour spent for which they may have any colorable claim for some compensation. These include, for example, hours spent traveling,[10] and hours spent researching items that were not discussed at the initial pretrial conference.[11]

## V. Costs and Expenses

Plaintiff has submitted a list of "costs and expenses," which total $4,911.47. Defendants criticize plaintiff's submission of several of these items. Regrettably, the extent of the expenditures in every category submitted is totally unexplained. For example, "travel and hotel" expenses are submitted as one lump sum of $1,105. There is no information as to the precise number of trips, number of nights in a hotel, number of meals, or any other such information that would help the Court or the defendants to determine the reasonableness and/or the necessity of the amounts expended. The Court has an inadequate record before it to justify imposing upon the defendants any of the costs or expenses claimed. Plaintiff shall, however, be afforded an opportunity to file promptly an appropriate bill of costs with the Clerk of this Court. Plaintiff shall be entitled to such taxable costs as the Clerk may determine are appropriate, reserving to any of the parties the right to file objections to the Clerk's assessment.

The Court realizes that some of the items submitted in plaintiff's list of "costs and expenses" may not be taxable costs. To the extent that plaintiff seeks compensation for any such items as expenses that may be recovered through an award of attorneys' fees, the Court shall deny com-

---

**9.** Defendants have submitted a Richmond attorney's affidavit, which states that there exist Richmond counsel who are competent to handle a case such as plaintiffs' and that he himself would have handled such a case. But this does not establish—or purport to establish—that there are in fact many attorneys in the Richmond area who would handle a case of this nature.

**10.** The records show that compensation is sought for hours spent on at least seven trips between Washington and Richmond, although it is sometimes unclear whether the hours include one-way or round-trip travel, or whether only partial travel time is sought.

**11.** *See supra,* note 8.

pensation. This is, of course, due to the absence of explanations about those expenses, which the Court has noted *supra*.

## VI. Computations.

Having made these findings, the Court is in a position to compute an attorneys' fee award. The computations are set out on the following page.

### Computation of Reasonable Attorneys' Fees

| Counsel | (a) Reasonable Hourly Rate | (b) Hours Submitted | (c) Hours After 20% Reduction | (d) (a) × (c) Fee |
|---|---|---|---|---|
| RSL partners | $125 | 376.75 | 301.40 | 37,675.00 |
| RSL associates | 85 | 330.25 | 264.20 | 22,457.00 |
| Local counsel partner | 75 | 34.03 | 27.22 | 2,041.50 |
| Local counsel associate | 45 | 12.25 | 9.80 | 441.00 |
| | | | | 62,614.50 |

Costs and expenses sought: $4,911
—expenses allowed: 0.

TOTAL FEE AWARD (not including interest): $62,614.50

In addition to the computed amount, the award should include post-judgment interest at the legal rate from the appropriate dates. *See* 28 U.S.C.A. § 1961(a). Interest accrues from the date of the judgment when plaintiff was held entitled to attorneys' fees—that is, April 20, 1984—for compensable work performed up to that date. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544–45 (5th Cir.1983) (*en banc*). The Court has calculated that the value of such compensable work is $48,710.70.[12] Interest accrues from the date of filing of this memorandum and the accompanying order, with respect to compensable work performed after April 20, 1984. *See id.* The Court has calculat-ed that the value of this compensable work—the remainder of the fee award—is $13,903.80.[13]

## VII. Relationship Between Fee Award and Results Obtained.

Defendants argue vigorously that a fee award of the magnitude sought by plaintiff (and presumably of the magnitude computed *supra* as well) is unreasonable in relation to the results obtained, and therefore must be reduced in accordance with the Supreme Court's recent holding in *Hensley, supra*. They support this contention primarily with two facts.

First, they compare the relief obtained—which is, in dollar terms, $17,311—with the

12. This amount is derived by subtracting the amount computed in footnote 13, *infra,* from the total fee award.

13. This amount is derived in the following manner. First, the hours accrued after April 20, 1984 for any attorney submitting hours after that date were totalled. For Mr. Lichtman, the total is 77.25 hours (60.25 hours in the first Lichtman/Levy affidavit, and 17 additional hours in the second Lichtman/Levy affidavit). For Ms. Levy, the total is 80.25 hours (57.5 hours in the first Lichtman/Levy affidavit, and 22.75 hours in the second Lichtman/Levy affidavit). For Mr. Cluverius, the total is 12 hours 2 minutes (12.03 hours) (all in the Cluverius/Cann affidavit). These were the only three attorneys for whom the records show hours accruing after April 20, 1984. Second, the Court reduced the number of hours by 20%, to incorporate its 20% reduction for lack of billing adjustment. Finally, the reduced hours were multiplied by the appropriate hourly rates for each attorney, and the results were totaled.

fee award of several times that amount. Second, they point out that plaintiff failed to obtain three types of relief sought: reinstatement, compensatory damages, and punitive damages, succeeding only on his backpay relief.

▆ Neither of these facts, in and of themselves, compel the conclusion that the fee award is unreasonable in relation to the results obtained. As for the disparity between the fee award and the dollar value of the relief obtained, courts since *Hensley* have awarded fees with similar disparities. *See Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455 (8th Cir.1983) (fees of $22,-752.24 for recovery of $1,500); *Clymore v. Far-Mar-Co., Inc.,* 576 F.Supp. 1161 (W.D. Ms.1983) (fees of over $16,000 for recovery of $6,093.89); *see also Greenhaw v. Lubbock County Beverage Association,* 721 F.2d 1019 (5th Cir.1983) (fees of $246,517 upheld where actual recovery by class members totalled $17,482).

There is good reason for not limiting fee awards to the dollar amount of the recovery, especially in civil rights cases brought by single plaintiffs. In such cases the monetary relief due as a consequence of unlawful, discriminatory conduct, such as not promoting a person, may often be extremely moderate, yet the problems of prevailing—especially where the defendants, as in the instant case, assert pretextual reasons for not promoting the plaintiff—may require extensive discovery. Further, a defendant may litigate the case vigorously, as indeed should be done, further increasing the number of hours required to prosecute the case successfully. To limit plaintiffs' attorneys' fees to the dollar amount of the recovery would force a number of victims of discrimination to go unrepresented—and would very likely mean that their injury would linger unredressed. The Court believes that such a result would be contrary to Congress's purpose in au-

thorizing attorneys' fee awards in such cases.

Defendants do not appear to contend that plaintiff's fee recovery is limited to the dollar value of his relief. They do argue that the disparity between relief obtained and fees sought warrants a downward adjustment. The Court disagrees, however, for the reasons stated *infra*.

▆ As for the fact that plaintiff failed to obtain the compensatory and punitive damages sought, this too does not compel a downward adjustment. As the Supreme Court stated in *Hensley*,

> Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Hensley, supra,* 461 U.S. at 435, n. 11, 103 S.Ct. at 1941, n. 11.

The Court finds that the relief obtained justifies the expenditure of attorney time involved here. Plaintiff prevailed against defendants with respect to nearly all of defendants' conduct towards him about which he complains in this action. This conduct persisted for a period of over two years. It involved repeated denials of promotion, abolition of plaintiff's supervisory position, denial of placement in a better available position, demotion to a position of manual labor in a stockroom, and surveillance of a kind to which no other employee was subjected. Insofar as these events affected plaintiff's salary during this entire period, plaintiff was made whole through this lawsuit. The fact that plaintiff did not obtain the remainder of the relief sought does not diminish the significance of this overall relief, which in itself justifies the hours reasonably expended in this lawsuit.[14]

---

**14.** Defendants argue that one remark of the Supreme Court in a footnote in *Hensley* compels a downward adjustment here. 461 U.S. at 1438, n. 14, 103 S.Ct. at 1942, n. 14. The remark

concerns an employment discrimination case, *Brown v. Bathke,* 588 F.2d 634 (8th Cir.1978), in which a plaintiff had failed to obtain reinstatement, compensatory damages, and punitive

*VIII. Conclusion*

 For the reasons stated herein, the Court finds that plaintiff is entitled to an award of $62,614.50 as reasonable attorneys' fees, plus interest.

An appropriate order will issue.

damages, although she did win backpay and expungement of her employment record. This pattern of relief sought and obtained is similar to the pattern of relief sought and obtained here. The Supreme Court noted that the plaintiff in *Brown* "had lost on the major issue of reinstatement," and suggested that the district court had correctly limited the fee award because of the scanty results obtained.

Defendants here fail to note, however, that the district court in *Brown* expressly found that the plaintiff "obtained only a minor part of the relief she sought." This appears to have been the basis of the Supreme Court's characterization of reinstatement as "the major issue" in *Brown*. The Court here, however, has found that the backpay award redressed the bulk of defendants' unlawful conduct over a two year period about which plaintiff complains, and that the time spent by plaintiff's counsel is justified by this award.

The Court reminds defendants that plaintiffs in two cases may seek in their complaints identical forms of relief, including backpay, among other things—but for one plaintiff, backpay may be a major part of the relief sought, in that it redresses a long sequence of unlawful behavior; for another, backpay may represent little.