**Dr. H. Allen ORSHAN, Plaintiff,**

v.

**Frank J. MACCHIAROLA and the Board of Education of the City of New York, Defendants.**

**No. 79 CV 309 (ERN).**

United States District Court,
E.D. New York.

Feb. 28, 1986.

Frederic J. Gross, Mt. Ephraim, N.J., R. Alan Aslaksen, Haddonfield, N.J., for plaintiff.

Philip Stephen Fuoco, Haddonfield, N.J., for fee petitioners.

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York Law Dept., New York City by Caryn M. Hirshleifer, Asst. Corp. Counsel, for defendants.

NEAHER, District Judge.

This case is before the Court for determination of two issues: (1) the rate or rates of prejudgment interest to be applied to the award of $68,000 to plaintiff and (2) his application for attorneys' fees pursuant to 42 U.S.C. § 1988 and an award of costs.

### I.

In its prior order of April 5, 1985 the Court requested the parties to brief the issue of the rate or rates of prejudgment interest applicable to the judgment entered September 28, 1983. After the denial of post trial motions, that judgment was entered upon a jury verdict which awarded $38,000 to plaintiff in economic losses and $30,000 in noneconomic losses. *Orshan v. Macchiarola*, 570 F.Supp. 620, 623 (E.D.N.Y.1983).

■ Before addressing the applicable rate, defendants ask the Court to strike the award of prejudgment interest. They rely on *Newburgh Land & Dock Co. v. Texas Co.*, 227 F.2d 732, 735 (2d Cir.1955), where Judge Learned Hand stated,

"It is the federal law that in actions at law when the award of interest rests in discretion, it is the jury who must exercise it, (footnote omitted) and it follows that we may not remand the case to the judge, but that we must modify the judgment by striking out the award of interest, and direct judgment to be entered for the amount of the verdict only."

This case was followed by *Hertz v. Graham*, 292 F.2d 443, 449 (2d Cir.1961), where the Court remanded the case for the limited purpose of submitting the issue of prejudgment interest to a jury. Unlike *Hertz*, plaintiff's failure to ask the Court to submit the issue of prejudgment interest to the jury cannot be attributed to a change in the law effected by the Court of Appeals. Plaintiff's silence, however, which may well not be considered a waiver, *see Mallis v. Bankers Trust Co.*, 717 F.2d 683, 693–94 (2d Cir.1983), *but see Robinson v. Watts Detective Agency*, 685 F.2d 729, 742 (1st Cir.1982), pales in the face of defendants' silence. Defendants raise this point, for the first time, despite having had an opportunity to submit appropriate jury instructions, object to the jury charge, move for a new trial and seek, pursuant to Fed.R. Civ.P. 60(b), to vacate a judgment which they cannot appeal. *Orshan v. Macchiarola*, 105 F.R.D. 534 (E.D.N.Y.1985) (discussion therein). Whatever merit this argument may have had at some earlier point in the proceedings, *see Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 84 (1st Cir. 1984), it is no longer viable. *See Scola v. Boat Frances R., Inc.*, 618 F.2d 147 (1st Cir.1980) (discussion therein); *see also Cardillo by Cardillo v. United States*, 767 F.2d 33, 35 (2d Cir.1985); *cf. In Re Frigitemp Corp.*, 781 F.2d 324 (2d Cir.1986); *Goodman v. Heublein, Inc.*, 682 F.2d 44, 47 n. 2 (2d Cir.1982); *Cibro Petroleum Products Inc. v. Sohio Alaska Petroleum Co.*, 602 F.Supp. 1520, 1565 n. 59 (S.D.N.Y. 1985).

■ Defendants also contend that the $30,000 awarded by the jury for emotional/mental distress is an unliquidated sum not subject to prejudgment interest

and, therefore, the Court should strike its award of prejudgment interest on that sum.

"In a proceeding involving unliquidated damages, such as the present case, the decision whether to award prejudgment interest is committed to the sound discretion of the district court."

*Feather v. U.M.W. of America,* 711 F.2d 530, 540 (3d Cir.1983) (citing *Lodges 743 and 1746, etc. v. United Aircraft Corp.,* 534 F.2d 422, 445–47 (2d Cir.1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976)); *accord Stern v. Shouldice,* 706 F.2d 742, 747 (6th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 487, 78 L.Ed.2d 683 (1983); *see also General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 103 S.Ct. 2058, 2061–62, 76 L.Ed.2d 211 (1983) (rejecting the common law distinction between liquidated and unliquidated claims in the award of prejudgment interest pursuant to 35 U.S.C. § 284 in patent infringement cases). Moreover, to grant defendants' request would require amendment of a judgment, *see Stern v. Shouldice, supra,* which is no longer procedurally available. *See Scola, supra.* As a result, and in accord with the prior order, 105 F.R.D. at 542, the Court will turn to the rate of prejudgment interest.

In its charge the Court instructed the jury on multiple elements of damage applicable to a single federal cause of action. *Orshan, supra,* 105 F.R.D. at 535; *Orshan, supra,* 570 F.Supp. at 622; Transcript of jury charge, March 24, 1983. Here, unlike *Wojtkowski v. Cade,* 725 F.2d 127, 129 (1st Cir.1984), there are no pendent state claims which might be subject to prejudgment interest under the law of New York.

■ In federal question cases, absent statutory directive, the rate of prejudgment interest is left to the Court's discretion. *Citizens Savings Bank v. Bell,* 605 F.Supp. 1033, 1047 (D.R.I.1985); *Donovan v. Freeway Construction Co.,* 551 F.Supp. 869, 881 (D.R.I.1982); *see E.E.O.C. v. County of Erie,* 751 F.2d 79, 82 (2d Cir. 1984); *Norte & Co. v. Huffines,* 416 F.2d 1189, 1192 (2d Cir.1969), *cert. denied sub nom. Muscat v. Norte & Co.,* 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970) (per curiam). Obviously, therefore, the Court of Appeals' approval of the adjusted prime rate of interest, 26 U.S.C. § 6621(c), as within the trial court's discretion in *County of Erie, supra,* does not preclude reference to the post judgment "Treasury bill" rate of interest specified in 28 U.S.C. § 1961(a). *See E.E.O.C. v. Wooster Brush Co., etc.,* 727 F.2d 566, 579 (6th Cir.1984).

■ Initially, plaintiff requested the rate pursuant to § 1961(a), but in light of *County of Erie,* he asks for the adjusted prime rate. Relying on 42 U.S.C. § 1988, defendants contend that the rate should be as prescribed by N.Y.Gen.Mun.Law § 3-a. Their reliance is misplaced, however, because, as is apparent from 26 U.S.C. § 6621, 28 U.S.C. § 1961, and the above cited case law, there is no lack of suitable remedies under federal law requiring the Court to look to New York law to compensate plaintiff adequately and fairly. Not unsurprisingly, in light of the court's discretion, a search of relevant reported decisions reveals prejudgment interest rates of 10%, *Whittlesey v. Union Carbide Corp.,* 35 F.E.P. Cases 1085, 1088 (S.D.N.Y.1983), *aff'd on other grounds,* 742 F.2d 724 (2d Cir.1984), 10.58%, *Robertson v. Doctors Hospital,* 33 F.E.P. Cases 785, 788 (E.D. Ark.1983), the rate in accordance with 28 U.S.C. § 1961, *Mother Goose Nursery Schools, Inc. v. Sendak,* 591 F.Supp. 897, 915 (N.D.Ind.1984), the applicable rate(s) in accordance with state law, *Stertz v. Gulf Oil Corp.,* 616 F.Supp. 136, 138 (E.D.N.Y. 1985); *Donovan, supra,* and the adjusted prime rate, *Marshall v. Burger King Corp.,* 509 F.Supp. 353, 356 (E.D.N.Y.1981). Faced with myriad possibilities and alternatives, one court was moved to state,

"This nearly indecipherable morass convinces the Court that the prudent and fair course is to follow *Donovan [v. Carlough,* 581 F.Supp. 271, 273 (D.D.C. 1984) ], and award simple interest at the 6% rate [pursuant to D.C.Code Ann. § 28–3302]."

*Foltz v. U.S. News & World Report, Inc.,* 613 F.Supp. 634, 648–49 (D.D.C.1985).

Defendants attempt to avoid *County of Erie* by emphasizing that the Court limited its indorsement of the appropriateness of the adjusted prime rate to a back pay award, a liquidated sum. They argue that the $30,000 awarded for noneconomic losses was unliquidated, hence *County of Erie* supports their contention that this Court's award of prejudgment interest on that portion of the recovery is erroneous. This argument is meritless in light of the Court's earlier observations concerning waiver.

█ In deference to the Court of Appeals' characterization of the adjusted prime rate as " 'widely known and accepted as a good indicator of interest rates generally.' " *County of Erie,* 751 F.2d at 82 (citation omitted), plaintiff will receive *simple* prejudgment interest at the following adjusted prime rates: 12% from October 1, 1980 to January 31, 1982; 20% from February 1, 1982 to December 31, 1982; 16% from January 1, 1983 to June 30, 1983; and 11% from July 1, 1983 to September 28, 1983.[1]

## II.

42 U.S.C. § 1988 grants the Court discretion to award a reasonable attorney's fee in this case. *See Gingras v. Lloyd,* 740 F.2d 210, 212 (2d Cir.1984). The instant application was filed February 8, 1985, some 17 months after the entry of judgment. Although the circumstance of this delay may permit defendants to claim prejudice, *see Neidhardt v. D.H. Holmes Co. Ltd.,* 701 F.2d 553, 554–55 (5th Cir.1983); *Gary v. Spires,* 634 F.2d 772 (4th Cir.1980) (per curiam); *see also White v. New Hampshire, etc.,* 455 U.S. 445, 454, 102 S.Ct. 1162, 1167, 71 L.Ed.2d 325 (1982); *but see Mendoza v. Blum,* 602 F.Supp. 200, 202 (S.D.N.Y.1985), they have not raised or addressed the issue. *See Cruz v. Hauck,* 762 F.2d 1230, 1238 (5th Cir.1985); *cf. Fulps v.*

*City of Springfield, Tenn.,* 715 F.2d 1088, 1096 (6th Cir.1983).

Plaintiff's attorney Gross has submitted papers in support of a schedule of fees as follows: Gross (499.8 hours × $190/hour), associates (170 hours × $45/hour), 25% multiplier ($24,916.75), and costs ($1,340.25). The application of plaintiff's other attorney, Alan Aslaksen, who served as lead trial counsel, requests compensation for a total of 207.1 hours (146 hours × $200/hour for trial and trial preparation, 52.3 hours × $125/hour for other work, and 8.8 hours × $45/hour for an associate). Defendants contest the adequacy of the supporting papers, the legitimacy of some of the hours, and the exorbitance of the requested hourly rates.

█ Decisions of the Supreme Court in *Webb v. Board of Education of Dyer County,* — U.S. —, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), furnish instructive guidelines for the still evolving framework for the award of attorney's fees pursuant to 42 U.S.C. § 1988. *See City of Riverside v. Rivera,* — U.S. —, 106 S.Ct. 5, 87 L.Ed.2d 683 (1985) (Rehnquist, J., Circuit Justice granting a stay of the judgment reported at 763 F.2d 1580 (9th Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985)). In computing the "lodestar" amount, the Court multiplies the reasonable number of hours expended on the case by a reasonable hourly rate. The fee petitioner bears the burden of submitting evidence supporting the hours worked and rates claimed. For work performed after June 15, 1983, the attorney must also submit contemporaneous time records. *New York Association for Retarded Children v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983).

---

**1.** The record counsels against plaintiff's request for compound interest. There is no evidence concerning how much of plaintiff's recovery would have been invested as opposed to consumed.

■ In this case, contemporaneous time records have not been furnished. This deficiency would justify a 30% reduction as a sanction for noncompliance, *see Hensley, supra,* 103 S.Ct. at 1942 n. 13; *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 749 F.2d 1000, 1008 (2d Cir.1984); however, in light of the record and the case law, the Court must disallow a larger number of hours. The entry of judgment on September 28, 1983 followed the Court's denial of cross motions for a new trial on September 7, 1983. The Court's docket reflects that the cross-motions were taken under advisement on June 11, 1983. In the time records submitted by Gross, the entries after this date are not so specific as to permit allocation between items related to the original litigation as opposed to the subsequent motion to vacate the judgment pursuant to Fed.R.Civ.P. 60(b). Initially, plaintiff joined in this motion, the granting of which would have permitted appeals by both sides, but later he opposed it. The work necessitated by the motion stemmed as much from plaintiff's attorney's failure to discover the entry of judgment as it did from defense counsel's similar failure, although both attributed the problem to the clerk's failure to dispatch notice of the entry of judgment. From Gross' actions and representations, the Court concludes that had he discovered the entry of judgment in a timely fashion, he would have filed a notice of appeal, which would have alerted his opponent. Logically, therefore, the motion to vacate the judgment was unnecessary. Moreover, it contributed nothing to the amount or fact of plaintiff's recovery. *Cf. Webb, supra,* 105 S.Ct. at 1928. For these reasons, all hours for Gross for items dated October 25, 1983 through 1984 are disallowed, resulting in a reduction of 24.35 hours.

Defendants characterize a number of the hours as excessive or duplicative. They specify as excessive 39.5 hours devoted to an unsuccessful motion to amend the complaint, *see Brown v. Bolger,* 102 F.R.D. 849, 862–63 (D.D.C.1984); *Dunten v. Kibler,* 518 F.Supp. 1146, 1151 (N.D.Ga.1981), and 8.4 hours devoted to the fee application. They also claim duplication of effort for associate Neuner's presence at three depositions in which he assertedly did not participate, *Dunten, supra,* 518 F.Supp. at 1152, for Gross' phone conversations and conferences with Aslaksen (16.1 hours), *id.* at 1153, for Gross' and Aslaksen's attendance at two court conferences (27.6 hours), and for assertedly duplicative pretrial preparation amounting to 157 hours. *See Hinkle v. Christensen,* 548 F.Supp. 630, 633 (D.S.D.1982).[2]

■ In general, Gross' time records do not permit a determination of which hours constitute a duplication of effort or excess. For example, a total of 11.2 hours is claimed for "review correspondence" without identifying the nature of the correspondence, and similarly, 9.45 hours for "prepare correspondence". *See Henry v. First National Bank of Clarksdale,* 603 F.Supp. 658, 665 (N.D.Miss.1984); *Vaughns v. Board of Education, etc.,* 598 F.Supp. 1262, 1276 (D.Md.1984), *aff'd* 770 F.2d 1244, 1245 (4th Cir.1985); *Inmates, etc. v. Zitnay,* 590 F.Supp. 979, 985 (D.Me.1984); *Chrapliwy v. Uniroyal, Inc.,* 583 F.Supp. 40, 47–48 (N.D.Ind.1983); *Ryan v. F.D.I.C.,* 24 Empl.Prac.Dec. (CCH) ¶ 31,449 (D.D.C. 1980). With the exception of the aforementioned 39.5 hours and 24.35 hours, Gross' time records are also inadequate to permit the Court to separate hours devoted to the meritorious claims from hours expended on the non-meritorious claims. *See Dunten, supra,* 518 F.Supp. at 1149.

---

**2.** Defendants also contest some items which refer to state court proceedings relevant to this matter. Gross avers that he has not included any hours devoted to a state court appeal which he characterizes as having been vital to defeating a defense of res judicata that defendants eventually raised and the Court rejected. *Orshan, supra,* 570 F.Supp. at 623. Obviously

hours expended on this appeal are not part of this litigation under *Webb, supra,* and therefore, are not compensable. However, time spent considering or examining the state court papers as they may have affected the defense of res judicata, an issue upon which plaintiff prevailed, is compensable. *See Perkins v. Cross,* 728 F.2d 1099, 1100 (8th Cir.1984) (per curiam).

 The Court's prior orders confirm that Gross spent considerable time on meritless claims, which were dismissed on the first motion for summary judgment and essentially redismissed on plaintiff's motion for a new trial after the jury's verdict on damages. The significance of the failure to separate hours spent on the successful endeavor from hours spent on the unsuccessful endeavors stems from the overall degree of success achieved in the litigation. The facts supporting the successful claim were not in dispute; hence the Court determined the issue of liability as a matter of law and granted partial summary judgment to plaintiff. The net result is that plaintiff prevailed on a relatively small portion of a large case. Consequently, the Court may reasonably infer from the record that counsel invested more hours overall than the case warranted.

 Where the record does not permit the Court to ascertain the exact number of hours attributable to non-meritorious claims, the Court may rely upon its best judgment and familiarity with the case, "having in mind that one of the most important criteria to be considered is the degree of success that the plaintiff achieved in the overall litigation." *Sisco v. J.S. Alberici Construction Co., Inc.*, 733 F.2d 55, 58 (8th Cir.1984); *see Hensley, supra*, 103 S.Ct. 1941 n. 12; *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984). In this case, to avoid a windfall for hours expended on unsuccessful claims and to account for duplication of effort, Gross' remaining hours will be reduced by 25%.[3] *See Fast v. School Dist. of City of Ladue*, 728 F.2d 1030, 1035 (8th Cir.1984) (en banc);

*Grogg v. General Motors Corp.*, 612 F.Supp. 1375 (S.D.N.Y.1985); *Mandhare v. Lafargue Elementary School*, 605 F.Supp. 238, 242–43 (E.D.La.1985); *Sun Pub. Co. v. Mecklenburg News, Inc.*, 594 F.Supp. 1512, 1518 (E.D.Va.1984); *Davidson v. Cook*, 594 F.Supp. 418, 426 (E.D.Va.1984); *Plummer v. Chemical Bank*, 592 F.Supp. 1168, 1171 (S.D.N.Y.1984); *Brown v. Bolger, supra; Dunten, supra*, 518 F.Supp. at 1151. This reduction also applies to the time requested for preparation of the fee application because counsel's failure to maintain contemporaneous time records undoubtedly increased the necessary work for this project. As a result of the above findings, attorney Gross is entitled to the following hours:

| | Requested | Granted |
|---|---|---|
| Gross: | 499.8 | 327 |
| Ventura: | 40 | 30 |
| Neuner: | 50 | 37.5 |
| Nichols: | 80 | 60 |

 Defendants also challenge Aslaksen's requests of 19 hours per day for the trial days of March 20–23, 1983 and 20 hours for March 24, 1983 as excessive on their face. *See DiFilippo v. Morizio*, 759 F.2d 231, 235–36 (2d Cir.1985) (discussion therein); *Chrapliwy, supra*, 583 F.Supp. at 49. Because the papers submitted by Aslaksen are not sufficiently detailed to permit a determination of whether these requests are excessive, include travel time, or duplicate Gross' efforts, the total request of 146 hours for trial and trial preparation will be reduced by approximately 20% to 117 hours. *See Roe v. City of Chicago*, 586 F.Supp. 513, 514 (N.D.Ill.1984).[4]

---

**3.** This reduction also responds to defendants' request that travel time be discounted 50% as was done in *Society for Good Will, etc. v. Cuomo*, 574 F.Supp. 994, 998 (E.D.N.Y.1985), *vacated on other grounds*, 737 F.2d 1253 (2d Cir.1984) (per curiam) and *In Re Agent Orange, etc.*, 611 F.Supp. 1296, 1320, 1349 (E.D.N.Y.1985). Although Gross avers that travel time is included in his hours, supplemental affidavit ¶ 5H, neither Gross' nor Aslaksen's time records identify travel time. *Daggett v. Kimmelman*, 617 F.Supp. 1269, 1282 (D.N.J.1985); *Ryan v. Ratheon Data Systems Co.*, 601 F.Supp. 243, 256 (D.Mass.1985).

**4.** In general, issues concerning duplication of effort and compensation for time devoted to successful claims cannot be ignored. *Smith, supra*, 104 S.Ct. at 3466–67. In addressing this matter, Gross avers that he has attempted to exclude time devoted to the issue of plaintiff's "forced retirement" because plaintiff did not prevail on that issue before the jury. Although such action is commendable, Gross does not explain exactly how much he eliminated from his request for this issue. More significantly, however, plaintiff failed to prevail on several other issues. Additionally, concerning duplica-

Having determined the number of reasonable hours for the case, the Court must next fix an hourly rate. Gross requests $190 per hour for his work and $45 per hour for his associates' time. He also seeks a 25% surcharge as a sanction for defendants' asserted misconduct during the litigation and as a multiplier, assertedly justified by the contingent nature of the case, as emphasized by the difficulty plaintiff confronted in terms of being unable to retain an attorney in New York, and the success achieved in terms of the case as precedent. Aslaksen requests $200 per hour for trial and trial preparation, $125 per hour for other time, and $45 per hour for an associate's time.

■■■■ A reasonable fee under 42 U.S.C. § 1988 is calculated on the basis of the prevailing market rate for an attorney's services in the relevant community. *Blum, supra,* 104 S.Ct. at 1547. Both Gross and Aslaksen are New Jersey attorneys who were admitted pro hac vice to this Court for the purposes of this case. Gross avers that plaintiff could not retain an attorney in New York in part, because the case was perceived as a loser. Plaintiff also could not locate an attorney who would work for a fee that he could afford. These obstacles to plaintiff's efforts do not alter the fact that Gross' and Aslaksen's overhead, billing rates, etc., derive from the legal market for practitioners in New Jersey. Considering the undisputed facts of the case, which facts required that it be filed in New York, the decision to accept the case did not rest upon the anticipation of recovering New York hourly rates. The Court concludes that the relevant market/community for this case is New Jersey. *See Ryan, supra,* 601 F.Supp. at 256; *Vaughns, supra,* 598 F.Supp. at 1280; *U.S. Industries, Inc. v. Norton Co.,* 578 F.Supp. 1561, 1565 (N.D.N.Y.1984); *McKenna v. Peekskill Housing Authority,* 573 F.Supp. 976, 980 (S.D.N.Y.1983); *cf. Polk v. N.Y.S. Dept. of Correctional Services,* 722 F.2d 23, 25 (2d Cir.1983); *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140–41 (8th Cir.1982) (en banc).

■■■■ In arriving at a reasonable rate, the Court should make express findings as to what the rates of the relevant community are, *Jones v. Amalgamated Warbasse Houses Inc.,* 721 F.2d 881, 885 (2d Cir. 1983), as derived from considering the petitioning attorney's billing rate, *Shakopee, etc. v. City of Prior Lake, Minnesota,* 771 F.2d 1153, 1160–61 (8th Cir.1985); *Rank v. Balshy,* 590 F.Supp. 787, 797–98 (M.D.Pa. 1984), which has been characterized as an outside limit, *Copeland v. Marshall,* 594 F.2d 244, 252 (D.C.Cir.1978), and as a reasonable rate, *Brown v. Fairleigh Dickinson University,* 560 F.Supp. 391, 412 (D.N. J.1983), awards in comparable cases, *Jones, supra,* and other evidence submitted by the attorney. Additionally, because Gross and Aslaksen performed services at times in the past, 1979–83 and 1985 and 1981–85, respectively, the reasonable hourly rate should reflect historic rates, *Williamsburg Fair Housing Committee v. Ross Rodney Housing Corp.,* 599 F.Supp. 509, 516 n. 7 (S.D.N.Y.1984); *Lyons v. Cunningham,* 583 F.Supp. 1147, 1154–55 (S.D.N.Y.1983), with consideration given to inflation and the delay in the attorney's receipt of payment. *See Institutionalized Juveniles, etc. v. Secretary of Public Welfare,* 758 F.2d 897, 922–24 (3d Cir.1985); *Litton Systems Inc. v. American Tel. & Tel. Co.,* 613 F.Supp. 824, 833 (S.D.N.Y.1985); *Brown, supra,* 102 F.R.D. at 872.

According to their respective affidavits and supporting papers, Gross has been admitted to practice in New Jersey since 1976, having graduated from the Rutgers Law School with honors. Prior thereto, he had earned a graduate degree in anthropology from Columbia University. He has pursued several civil rights actions of diverse sorts in the courts in New Jersey and avers that his asking rate of $190 per hour is higher than the most recent comparable

---

tion of effort, the discussion in *In Re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983), explains the wisdom and desirability of detailed time records where a plaintiff is represented by more than one attorney.

case in which he received $150 per hour; however, he does not identify this case or the court making the award. He adds that his request for hours does not reflect many hours spent on the case but not logged. Aslaksen has been admitted to practice in New Jersey since 1972 and primarily works as a trial lawyer. As of mid-1985, he had several civil rights actions either tried, settled, or pending in New Jersey Federal Courts. Like Gross, he offers general averments that his requested rates are comparable to those of other similar New Jersey cases, that he is aware of New Jersey attorneys who bill at higher rates for non-contingency cases, and that New York attorneys of comparable skill and experience bill at higher rates.

> "The affidavit by an attorney should include specific information about the prevailing rate in the community, and/or about the attorney's own rate, actually received, for similar work."

*Krodel v. Young*, 576 F.Supp. 390, 396 (D.D.C.1983). The instant affidavits could have furnished more specifics, *See Nat. Ass'n of Concerned Vets. v. Secretary of Defense*, 675 F.2d 1319, 1325–26 (D.C.Cir. 1982) (per curiam); however, the Court attributes the deficiencies to the primary nature of these attorneys' practices, which appear to be contingent fee cases. The description of the cases which these attorneys have pursued permit the inference that the client, as was the case here, could not afford to finance the litigation other than by making the fee contingent on a recovery.

Apparently believing that the relevant market is New York, counsel for the petitioning attorneys has submitted a memorandum of law containing awards in New York Federal civil rights cases. In one recent New Jersey case, the Court received evidence of hourly rates from $60 to $250 and characterized rates of $150 per hour to $300 per hour as high. *Daggett, supra*, 617 F.Supp. at 1282. A survey of relevant reported New Jersey decisions reveals that the span of hourly rates stems from the time frame of the cases, 1977–85, a period

relevant to the instant case, the nature of the cases, from large to small and relatively simple to very complex, and the quality and experience of the attorneys, from recent admittees to a 30 year veteran. *Hall v. Borough of Roselle*, 747 F.2d 838, 841 (3d Cir.1984) ($80/hr. for attorney for successful prosecution of assault and battery by police officers); *Daggett, supra*, ($150–$250/hr. for attorneys in a congressional district reapportionment suit); *May v. Cooperman*, 582 F.Supp. 1458, 1462 (D.N.J. 1984) ($75–$125/hr. for attorneys contesting New Jersey's "moment of silence" law); *Poston v. Fox*, 577 F.Supp. 915, 923 (D.N.J.1984) (Suit challenging conditions at a county jail, $66–$82.50/hr. for work from 1980–81 based on a 10% adjustment to the attorney's billing rate for expertise); *Brown, supra*, 560 F.Supp. at 413 ($45–$150/hr. for attorneys defending a Title VII action); *Foster v. Gloucester County, etc.*, 465 F.Supp. 293, 302 (D.N.J.1978) ($75/hr. for an attorney in an employment discrimination suit); *Carmel v. Borough of Hillsdale*, 178 N.J.Super. 185, 428 A.2d 548, 551 (App.Div.1981) ($500 plus costs for successful challenge to validity of an antipornography ordinance); *Council Enterprises Inc. v. City of Atlantic City*, 200 N.J.Super. 431, 491 A.2d 789 (Law.Div. Atlantic Co.1984) ($200/hr. for high quality and skill in challenging an ordinance prohibiting an adult bookstore in a certain location); *Right to Choose v. Byrne*, 173 N.J.Super. 66, 413 A.2d 366, 370 (Ch.Div. Middlesex Co.1980) ($50–$75/hr. for attorneys challenging the constitutional validity of a state statute concerning Medicaid); *see Transamerica Ins. Co. v. Keown*, 85 F.R.D. 120, 128 (D.N.J.1980) ($75/hr. for senior attorneys and $50/hr. for junior attorneys defending a diversity action concerning an attorney malpractice insurance policy).

■ Gross and Aslaksen have also submitted affidavits from Herbert B. Newberg, Esq. and Frederick P. Hafetz, Esq. Mr. Newberg has been admitted in Pennsylvania since 1962, having graduated from Harvard Law School in 1961. He has a

lengthy curriculum vitae and professes expertise on the subject of fees. From his experience, the hourly rates requested are within the range of prevailing market rates in New York and other Middle Atlantic States cities. Mr. Hafetz is a partner in Goldman & Hafetz, admitted to practice in New York since 1964. He has known Gross since 1976 and has worked with him on six different Federal cases in New York, New Jersey, and Pennsylvania. He praises Gross' skills and opines that attorneys of Gross' caliber in New York routinely command $175 to $225 per hour. The Court may consider these affidavits, which could have been more specific, *see Nat. Assoc. of Concerned Vets., supra,* as it deems appropriate. *See Burston v. Commonwealth of Virginia,* 595 F.Supp. 644, 651 (E.D.Va. 1984).

■ After considering all of the evidence and relevant facts, the Court concludes that a reasonable hourly rate for Gross and Aslaksen is $125 and that the associates' hours should be compensated at $45.[5] These determinations result in the following lodestar:

| Attorney | Hours | Hourly Rate | | Total |
|---|---|---|---|---|
| Gross | 327 | $ 125 | = | $40,875 [6] |
| Gross | 14.5 | $ 125 | = | $ 1,812.50 [7] |
| Gross associates | 127.5 | $ 45 | = | $ 5,737.50 |
| Aslaksen | 178.1 × | $ 125 | = | $22,962.50 |
| Aslaksen associate | 8.8 | $ 45 | = | $ 396 |

■ Gross also requests a 25% multiplier to reflect defendants' misconduct in the case; however, a fee award is not the vehicle for punishment. *Rank, supra,* 590 F.Supp. at 792 n. 4. He further requests an upward adjustment of the hourly rate to reflect the contingent nature of the litigation and the high risk factor. He avers that plaintiff was informed that he could not win the case and should not, therefore, invest money in an attorney. The respective positions pro and con concerning multipliers to reflect the contingent nature of a civil rights suit are set out in *Wildman v. Lerner Stores Corp.,* 771 F.2d 605 (1st Cir.1985) and *McKinnon v. City of Berwyn,* 750 F.2d 1383 (7th Cir.1984). Although this issue was expressly left open in *Blum, supra,* 104 S.Ct. at 1550, the Court there clearly placed the burden upon the fee petitioner to justify an upward adjustment of the lodestar on the basis of primary facts (evidence) as opposed to ultimate facts and/or conclusions of law. *Id.* at 1548–49.

Perhaps to avoid the effect of *Blum,* Gross asks that the hourly rate reflect the high risk of loss. In so doing, he attempts to demonstrate that the case was not an easy one, as defendants would have the Court believe and despite plaintiff's having prevailed by summary judgment. Defendants' firm litigation posture and refusal to consider settlement assertedly underscore the difficulties Gross faced.

■ Given the multitude of factors which the Court has had to consider in setting a reasonable hourly rate in this case, the evidence offered does not commend an upward adjustment of that rate. As additional benefits to plaintiff, Gross cites the increased value of plaintiff's pension, the removal of the stigma of demotion, and the emotional gratification of vindication. The Court does not understand,

---

5. The Court has considered the possibility of various rates for in-court as opposed to out-of-court time, *see Henry v. Webermeier,* 738 F.2d 188, 195 (7th Cir.1984); *Cohen v. West Haven, etc.,* 638 F.2d 496, 505 (2d Cir.1980), as well as a "break point" analysis to account for the time span of the case as was done in *Carey, supra,* 711 F.2d at 1152. Unfortunately, however, the Court has no hard evidence of these attorneys' relevant billing rates from which to start; consequently, the hourly rate reflects all relevant considerations as they are addressed by the evidence.

6. To recapitulate, in his initial petition, Gross requested compensation for 484.3 hours. In his supplemental affidavit, he added 15.5 hours, making a total of 499.8 hours. After deducting 39.5 hours and 24.35 hours, the Court reduced the remaining 436.05 hours by 25%, leaving approximately 327 compensable hours.

7. In his supplemental affidavit ¶ 4, Gross documents an additional 14.5 hours from February 26, 1985 to April 26, 1985 concerning the issues of attorneys fees and the rate of prejudgment interest. The Court will permit compensation for these hours.

however, how these circumstances enhance the value of Gross' services in terms of the litigation history of this case as it proceeded (and continues) through years of contentious battling. Moreover, the adversarial posture of defendants necessarily increased the number of legitimate hours which Gross had to devote to the portion of the case upon which plaintiff prevailed. For all of the above reasons, in its discretion, the Court denies the request for an enhancement of the fees award.

On the basis of the foregoing, the Court awards $48,425 plus interest from the date of this order to attorney Gross and $23,-358.50 plus interest from the date of this order to attorney Aslaksen. *See Williamsburg, etc., supra,* 599 F.Supp. at 522–23 (cases cited and discussion therein).

### III.

Gross also seeks compensation for costs as follows:

| "Filing fee | $ 60.00 |
| Fee for local counsel | 200.00 |
| Deposition Transcripts: | |
| Metro reporting (check 471) | 66.00 |
| Merlino reporting (check 472) | 421.75 |
| Merlino reporting (check 476) | 329.00 |
| Merlino reporting (check 478) | 143.50 |
| Witness fees (checks 939, 944) | 63.00 |
| Transcripts of jury charge | 60.00" |

Affidavit of Gross at ¶ 12. In his supplemental affidavit at ¶ 5A, he identifies the deposition transcripts as follows:

"(1) the second copy of the deposition of Dr. Orshan on June 12, 1981; (2) the original (for filing) and first copy of the deposition of James Boffman on June 15, 1981; (3) the original (for filing) and first copy of the deposition of Irving Anker on June 16, 1981; (4) the original (for filing) and first copy of the depositions of James Boffman and Rubin Maloff on June 17, 1981; (5) the original (for filing) and first copy of the deposition of Frank J. Macchiarola on June 30, 1981."

He also relates the services performed by local counsel in ¶ 5D.

 After considering the documents submitted, the Court concludes that plaintiff is entitled to compensation for the fil-

ing fee, *Rank, supra,* 590 F.Supp. at 802, the fee for local counsel, *see Ryan, supra,* 601 F.Supp. at 256; *Burston, supra,* 595 F.Supp. at 651, and the witness fees, *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1282 (7th Cir.1983); *Miller v. City of Mission, Kansas,* 516 F.Supp. 1333, 1339 (D.Kan.1981). Inasmuch as the transcript of the jury charge was relevant to the motion for a new trial, that cost is also recoverable. *See Rank, supra; Kaimowitz v. Howard,* 547 F.Supp. 1345, 1352 (E.D. Mich.1982), *aff'd* 751 F.2d 385 (6th Cir. 1984); *Miller, supra.* Finally, the Court finds that the deposition costs requested were necessary for the case. *See Bruno v. Western Electric Co.,* 618 F.Supp. 398, 406 (D.Colo.1985); *Levka v. City of Chicago,* 107 F.R.D. 230, 231, 232 (N.D.Ill.1985); *Rank, supra; Kaimowitz, supra,* 547 F.Supp. at 1353. In sum, the Court awards the entire request of $1,340.25 as costs.

SO ORDERED.